CENCOR, INC., a Delaware corporation, doing business as Colorado College of Medical and Dental Careers, Petitioner,

v.

Arla G. TOLMAN, Tracie Allen, Jeanette Berry, Carol Bowser, Karen Castro, Laura Cowan, Cheryl Garrison, Simin Hakimi, Francis Hiler, Suzanne Hill, Carl McGirl, Shelley Montoya, Stacey Muniz, Trace Nigh, Lisa Norton, Donna Pacheco, Louise Ragolia, Tanya Szalwinski, and Sylvia Westbrook, Respondents.

No. 92SC821.

Supreme Court of Colorado, En Banc.

Feb. 7, 1994.

As Modified on Denial of Rehearing Feb. 28, 1994.

Cooper & Kelley, P.C., Michael T. Mihm, John R. Mann, Denver, for petitioner.

George C. Price & Associates, Inc., George C. Price, Denver, for respondents.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Tolman v. CenCor Career Colleges, Inc.,* 851 P.2d 203 (Colo.App.1992), the court of appeals held, *inter alia,* that the trial court erred in entering summary judgment for the petitioner, CenCor Career Colleges, Inc. (CenCor), on a breach of contract claim alleging failure to provide promised educational experience. Having granted certiorari to review that portion of the court of appeals' judgment, we affirm.

I

CenCor is a Delaware corporation transacting business in Colorado as Colorado College of Medical and Dental Careers. CenCor is a vocational school offering adult education courses designed to train students for technical jobs as medical and dental assistants.

Respondents, Arla G. Tolman, Tracie Allen, Jeanette Berry, Carol Bowser, Karen Castro, Laura Cowan, Cheryl Garrison, Simin Hakimi, Francis Hiler, Suzanne Hill, Carl McGirl, Shelley Montoya, Stacey Muniz, Trace Nigh, Lisa Norton, Donna Pacheco, Louise Ragolia, Tanya Szalwinski, and Sylvia Westbrook, are former students of CenCor. The respondents and nineteen other [1] former CenCor students filed a civil action against CenCor alleging claims of negligent failure to inform students of the education to be provided; negligence of a specialist; negligence

---

1. The claims of 19 of the 38 plaintiffs were dismissed for failure to comply with discovery requests. Although six of the plaintiffs whose claims were dismissed on discovery grounds were listed as appellants in the notice of appeal, the issue of the propriety of the trial court's dismissal of their claims was not briefed and is deemed abandoned. *See Blinder, Robinson & Co., Inc. v. Alzado,* 713 P.2d 1314, 1319 (Colo. App.1985), *aff'd,* 752 P.2d 544 (Colo.1988). Thus, the 19 respondents are the only remaining plaintiffs herein.

per se based on provisions of section 18–5–301(1)(e), 8B C.R.S. (1986) (prohibiting false and misleading advertising statements); negligence per se based on provisions of sections 12–59–101 to –127, 5 C.R.S. (1985 & 1988 Supp.) (regulating private schools); intentional infliction of emotional distress; misrepresentation; concealment; and four contract claims (breach of contract, breach of express warranties, unjust enrichment, and promissory estoppel).[2] The respondents sought compensatory and exemplary damages.

CenCor answered and, after conducting extensive discovery, filed a motion for summary judgment on all claims. Based on the pleadings, an affidavit of CenCor's director, the respondents' answers to interrogatories, and portions of depositions of the respondents, the trial court granted CenCor's motion. The trial court concluded that the negligence claims were in essence claims of educational malpractice, a theory of recovery not recognized in this jurisdiction. The trial court alternatively concluded that even if it were to recognize educational malpractice claims, the undisputed facts failed to establish such claims. The trial court also entered summary judgment for CenCor on the contract claims and the claims based on misrepresentation and concealment. The trial court concluded that the respondents failed to submit any factual support for their claims that CenCor breached contractual obligations to them.

On appeal, the respondents argued that educational malpractice claims should be recognized in this state. They also contended that disputed issues of material fact remained to be resolved respecting their contract claims and the claims based on misrepresentation and concealment. Holding that educational malpractice claims are not cognizable in this jurisdiction, the court of appeals affirmed the trial court's judgment insofar as it dismissed all claims of the respondents based on allegations of negligent conduct by CenCor. However, the court of appeals reversed the trial court's summary judgment

with respect to the respondents' four contract claims and the claims of misrepresentation and concealment. The court of appeals held that those claims presented disputed issues of material fact and remanded the case to the trial court for further proceedings.

CenCor filed a petition for certiorari requesting review of that portion of the court of appeals' judgment that remanded the case for trial on the contract, misrepresentation, and concealment claims. The respondents did not file a cross-petition for certiorari review of the court of appeals' holding that this state does not recognize claims based on educational malpractice. We denied CenCor's petition insofar as it requested certiorari review of that portion of the court of appeals' judgment reinstating the respondents' claims based on allegations of breach of express warranties, unjust enrichment, promissory estoppel, misrepresentation, and concealment. Our review here is therefore limited to the question of the propriety of that portion of the court of appeals' judgment reversing the trial court's summary judgment on the respondents' breach of contract claim.

## II

■ The basic relationship between a student and an educational institution is contractual in nature. *Zumbrun v. University of Southern California*, 25 Cal.App.3d 1, 101 Cal.Rptr. 499, 504–05 (1972); *Wickstrom v. North Idaho College*, 111 Idaho 450, 725 P.2d 155, 157 (1986). *See also Malone v. Academy of Court Reporting*, 64 Ohio App.3d 588, 582 N.E.2d 54, 58–59 (1990). Materials actually provided to a student, including enrollment agreements and catalogs, may become part of the agreement. *Zumbrun*, 101 Cal. Rptr. at 504. Contract claims that in fact attack the general quality of educational experiences provided to students have generally been rejected. *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir.1992) (citing *Wickstrom*, 725 P.2d at 157 n. 1; *Hunter v. Board of Educ.*, 292 Md. 481, 439 A.2d 582, 586 n. 5

---

**2.** The respondents also alleged claims based on theories of breach of implied warranties; violations of the Colorado Organized Crime Control Act, §§ 18–17–101 to –109, 8B C.R.S. (1986 & 1988 Supp.); and violations of the Colorado Consumer Protection Act, §§ 6–1–101 to –115, 2 C.R.S. (1973 & 1988 Supp.). The respondents voluntarily dismissed these claims.

(1982); *Torres v. Little Flower Children's Servs.*, 64 N.Y.2d 119, 485 N.Y.S.2d 15, 19–20, 474 N.E.2d 223, 227 (1984), *cert. denied*, 474 U.S. 864, 106 S.Ct. 181, 88 L.Ed.2d 150 (1985)). Such claims in reality raise questions concerning the reasonableness of conduct by educational institutions in providing particular educational services to students—questions that must be answered by reference to principles of duty, standards of care, and reasonable conduct associated with the law of torts.

However, when students allege that educational institutions have failed to provide specifically promised educational services, such as a failure to offer any classes or a failure to deliver a promised number of hours of instruction, such claims have been upheld on the basis of the law of contracts. *See, e.g., Ross*, 957 F.2d at 415–17; *Zumbrun*, 101 Cal.Rptr. at 504–05. *See also Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 454 N.Y.S.2d 868, 873 (1982). Similarly, if certain requisites necessary to attain certification in a specific program are not even offered, a claim based on contract principles may be viable. *Wickstrom*, 725 P.2d at 157. For example, in *Zumbrun*, an older student returned to college to obtain a degree in sociology, with a specialty in gerontology. The student enrolled in a sociology course required for such a degree. Midway through the semester the instructor of the course, in connection with a faculty strike protesting the federal government's policies regarding Cambodia, ceased giving lectures, refused to give a final examination, and assigned all enrolled students a "B" grade. The student filed a civil action, asserting a deprivation of education resulting in a loss of present and future income. The court concluded that the complaint stated a claim for relief based on the theory that the institution breached contractual promises to provide a certain number of hours of instruction and a final examination. *Zumbrun*, 101 Cal.Rptr. at 504–05.

In *Ross*, an undergraduate basketball player who was academically disadvantaged but attended a university on an athletic scholarship, who maintained a "D" average, and who in four years earned only 96 of the 128 credits required for graduation, filed a civil action against the university seeking damages for failure to provide promised academic services and programs. Many of the 96 credits he did acquire were awarded in non-academic courses and were therefore not acceptable for purposes of calculating the requisite 128 credits. The plaintiff alleged, *inter alia*, that the university promised that he would be able to participate in a meaningful way in the university's academic programs; that it agreed to provide special services to him, such as tutoring sessions and affording him a reasonable opportunity to take advantage of the tutoring services; and that the university breached its agreement to provide these services. The court concluded that these allegations were sufficient to state a breach of contract claim. *Ross*, 957 F.2d at 415–17.

In their sixth claim for relief, the respondents in essence assert that provisions of the enrollment agreements and CenCor's catalog constituted express terms and conditions of a contract and that CenCor breached the contract by failing to provide specific educational services promised therein. Among their general allegations, the respondents assert:

9. In an effort to induce the [respondents] to enroll in [CenCor], certain promises, oral and written, were made to each [respondent], those promises included, but were not limited to:

a. [Respondents] would be trained on up-to-date equipment and instruments.

b. [Respondents] would be working under the supervision of qualified faculty.

. . . .

g. Computer, word processing and typing would be a part of the curriculum.

One respondent alleges that she has a limited ability to communicate in the English language, that CenCor promised to provide her with English language instruction, and that CenCor did not provide such instruction. Other respondents allege that although CenCor represented that it would permit students to repeat course work at no extra cost, it in fact charged additional fees to students who repeated classes.

■ The allegations that CenCor breached specific contractual obligations it owed to the

respondents are incorporated by reference into the sixth claim. To the extent these obligations constitute educational services for which the respondents allegedly paid and which CenCor allegedly failed to provide, the sixth claim for relief alleges a breach of contract claim distinct from the general allegations of unreasonable conduct that characterize the respondents' negligence claims.

### III

In its motion for summary judgment, CenCor asserted that, contrary to the respondents' general allegations, it had provided all relevant materials and programs promised by the terms of the enrollment agreements and the course catalog. In support thereof, CenCor also attached portions of the respondents' depositions. The respondents' reply to the motion included the respondents' verified answers to interrogatories served by CenCor.

 In assessing the sufficiency of the evidence for purposes of determining a motion for summary judgment, all inferences from factual averments must be made in favor of the non-moving party. *Dominguez v. Babcock,* 727 P.2d 362, 365 (Colo.1986); *Jones v. Dressel,* 623 P.2d 370, 373 (Colo. 1981). The moving party has the burden of initially establishing the absence of any genuine issue of material fact. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 712 (Colo.1987).

■ CenCor argues that the evidentiary documents disclose no disputed material facts relevant to the breach of contract claim. We disagree. Among the interrogatories submitted to the respondents by CenCor were requests for detailed facts upon which the sixth claim for relief was based. Some of the respondents answered the interrogatories with general comments to the effect that they had not received the education they had been promised. However, most of the respondents also replied that CenCor had obligated itself to provide modern equipment in good working condition, qualified instructors, and computer training for all students, but did not fulfill those obligations. In addition, a few respondents also replied that CenCor was required by its contract to provide advanced or specialized training at no extra cost, but in fact required additional fees for such advanced training.

It is true that the selected portions of the respondents' depositions submitted by CenCor in support of its motion for summary judgment primarily contain general grievances about the quality of CenCor's programs. However, the respondents' answers to interrogatories establish disputes of material fact relating to the breach of contract claim set forth in the sixth claim for relief. These factual disputes, as well as other factual disputes, must be resolved by the trier of fact.

### IV

For the foregoing reasons, we affirm the judgment of the court of appeals.