[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE
This case is one of four consolidated cases brought against the defendant, The Mead School for Human Development. In each case, the defendant filed a Motion to Strike the plaintiffs' amended complaints. Oral arguments on all four Motions to Strike were heard by this court on October 26, 1998.
In the present case, the plaintiffs, William G. Tankoos, Jr. and Linda A. Tankoos bring this action individually and as parents, next friends and legal guardians of their minor son, Grant Tankoos, against the defendant, The Mead School for Human Development (Mead School, or Mead). The plaintiffs' third amended complaint, dated March 4, 1998, sounds in negligence (count one), CT Page 7480 breach of contract (count two), fraudulent misrepresentation (count three), unjust enrichment (count four), tortious interference with plaintiffs' contract with a third party (count five), Connecticut Unfair Trade Practices Act (count six), and misappropriation and usurpation of parental rights and authority (count seven). The defendant filed a Motion to Strike counts one, two, three, four, six and seven of the complaint, and the plaintiffs' prayer for prejudgment interest.
STANDARD OF REVIEW
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted. . . . [W]e must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270-71, 709 A.2d 558 (1998). "[A] motion to strike does not admit legal conclusions or the truth or accuracy of opinions stated in the pleading at which the motion is directed."Fairfield Lease Corp. v. Romano's Auto Service, 4 Conn. App. 495,497, 495 A.2d 286 (1985).
The facts alleged by the plaintiffs, and taken as true for purposes of this motion to strike, can be summarized as follows. The plaintiffs' son, Grant Tankoos, transferred to the Mead School from the Royle School in Darien, Connecticut in October 1990. The Mead School is a private school located in Riverside, Connecticut. The plaintiffs signed "enrollment contracts" with the defendant for the school years 1990-91, 1991-92, and 1992-93. Grant Tankoos attended Mead from October 1990 through June 1993. Prior to his enrollment at Mead, Grant Tankoos "had been diagnosed with a `specific learning disability' by a statutorily appointed `Planning and Placement Team' on May 25, 1989." The Mead School did not provide Grant Tankoos with special education despite his having been diagnosed with a "specific learning disability." The plaintiff parents had to hire an independent tutor at their own expense to provide such special education to their son. The plaintiffs were not provided with accurate reports regarding their son's progress at school or timely notice of any academic, behavioral or social problems. Grant Tankoos also attended programs at the Mead School, including presentations by CT Page 7481 members of "ACT UP" (AIDS Coalition to Unleash Power) and practitioners of the Wicca religion, or witchcraft, without his parents' knowledge or consent.
The plaintiffs sought to transfer their son to another private school beginning in the school year 1993-94. When the Mead School learned that Grant Tankoos had been accepted at another school, it informed the new school that the plaintiffs owed Mead tuition, but did not mention that the plaintiffs disputed the tuition debt. The new school then informed the plaintiffs that the enrollment offer was rescinded until such time as the plaintiffs paid the money they owed to the Mead School.
Count One
Count one sounds in negligence. In Count One, the plaintiffs allege that the defendant "breached its duty to educate the plaintiffs' son and its duty to provide him with the specialized teaching, tutoring, training, education and resources that he needed, and was therefore negligent. . . ." The plaintiffs allege sixteen ways that the defendant was negligent, including representing that it was equipped with the resources necessary to provide the plaintiffs' son with the educational services that he needed; failing to obtain their son's public school records which would have indicated that he had a "specific learning disability"; failing to identify the fact that their son was learning disabled; allowing the plaintiffs to bear the cost of an independent tutor to provide Grant with special education; failing to provide educational services that would advance the academic skills of their son; and failing to support their son's academic strengths or to recognize and address his weaknesses. The defendant moves to strike count one on the ground that the Connecticut Supreme Court, like every other state court to consider an action based on negligent education or educational malpractice, has expressly declined to recognize such a cause of action.
The defendant cites Gupta v. New Britain Hospital,239 Conn. 574, 687 A.2d 111 (1996) in support of its contention that the Connecticut Supreme Court has rejected such a cause of action. The plaintiffs have not attempted to distinguish Gupta. Instead, they cite a Montana case, B.M. v. State, 649 P.2d 425
(Mont. 1982), to support a finding that Mead owed the plaintiffs' son a duty of care. In that case, the Montana Supreme Court found CT Page 7482 that the State, based on statutes governing special education, owed a duty of care to special education students. Id., 427. The plaintiffs suggest that Connecticut education statutes provide a framework for imposing that same duty of care in the present case.
The primary distinction between the Montana case and the present case is that the Montana case involved acts of public school officials and Montana's statutes and regulations imposed duties on such public school officials in regard to special education students. Id. In the present case, the defendant is a private school and Connecticut statutes regarding special education do not impose duties on private schools. General Statutes § 10-76a et seq.
In the present case, this court finds that the Supreme Court's decision in Gupta v. New Britain Hospital, supra,239 Conn. 574, controls this issue. In Gupta, the plaintiff was a physician who was dismissed from a residency training program at the defendant hospital. Id., 575. The plaintiff sued alleging' that the defendant hospital violated his residency agreement and thereby breached his employment contract. Id. The trial court granted the hospital's motion for summary judgment after concluding that the residency agreement created an educational relationship rather than an employment relationship and that the plaintiff's dismissal was an academic decision, not an employment decision. Id., 580-81.
On appeal, the Supreme Court considered the plaintiff's claim that even if his dismissal was an academic decision, the hospital still breached its obligations under the residency contract by failing "to provide him a residency program that would reasonably and adequately train him.'" Id., 589-90. The Supreme Court concluded that "[w]here the essence of the complaint is that [an educational institution] breached its agreement by failing to provide an effective education, the court is . . . asked to evaluate the course of instruction [and] called upon to review the soundness of the method of teaching that has been adopted by [that] educational institution. . . This is a project that the judiciary is ill equipped to undertake." (Citations omitted; internal quotation marks omitted.) Id., 590.
In analyzing the plaintiff's breach of contract claim, the court stated, "[i]n reality, a claim such as that advanced by the plaintiff raise[s] questions concerning the reasonableness of CT Page 7483 conduct by educational institutions in providing particular educational services to students — questions that must be answered by reference to principles of duty, standards of care, and reasonable conduct associated with the law of torts. Because these tort principles are difficult, if not impossible, to apply in the academic environment, courts have almost universally held that claims of `educational malpractice' are not cognizable. Among other problems for adjudication, these claims involve the judiciary in the awkward tasks of defining what constitutes a reasonable educational program and of deciding whether that standard has been breached. . . . In entertaining such claims, moreover, courts are required not merely to make judgments as to the validity of broad educational policies . . . but, more importantly, to sit in review of the day-to-day implementation of these policies." Id., 590-91.
Although the plaintiff's claim in Gupta was for breach of contract, the court's discussion of tort principles and the associated policy considerations making their application difficult, if not impossible, was essential to its analysis. Implicit in the court's rejection of a breach of contract claim arising from educational services, except in two specific situations, is a rejection of any claim for negligent education or educational malpractice. See also Bell v. West Haven Board ofEducation, Superior Court, judicial district of New Haven at New Haven, Docket No. 399597 (December 29, 1997, Hartmere, J.).
Based upon the Supreme Court's discussion in Gupta, of the difficulty of applying tort principles to claims based on a failure to provide an effective education, and its implicit rejection of a claim for negligent education, this court finds that a cause of action for negligent education, as alleged in count one, cannot be maintained. Accordingly, the defendant's motion to strike count one is granted.
Count Two
Count two sounds in breach of contract. The defendant moves to strike count two on the ground that such a cause of action is precluded by the reasoning of cases rejecting a cause of action arising from educational services.
In Gupta v. New Britain Hospital, supra, 239 Conn. 591, the Supreme Court found that the policy considerations that preclude a tort action based upon allegations of failure to provide an CT Page 7484 effective education were equally applicable when the action is based on a breach of contract claim. The court did, however, identify two situations where a claim for breach of contract might lie. Id., 592. In the present case, the plaintiffs argue that their allegations fall within both of these exceptions.
"The first [exception] would be exemplified by a showing that the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field. . . ." Gupta v. New Britain Hospital, supra, 239 Conn. 592-93. The court cited two cases supporting the exception based on a "fundamental failure" of the educational program — Wickstrom v. North Idaho College, 111 Idaho 450,725 P.2d 155 (1986); and Ross v. Creighton, University,957 F.2d 410, (7th Cir. 1992).
In Wickstrom v. North Idaho College, supra, 725 P.2d 155, the Idaho Supreme Court held that a cause of action in contract might be maintained where there was a failure to provide the fundamentals of a course. "Such fundamentals would include the number of days/hours required to complete a prescribed course of study and other objective criteria in a course's presentation. Such a failure to provide objective fundamentals, which could result in a breach of the implied contract between college and student, would not implicate the policy concerns regarding the viability of contract claims predicated upon the more subjective nuances of the teacher-student relationship (i.e., methodology of teaching and other matters usually raised under the rubric, `educational malpractice' . . .)." Id., 158 n. 1.
In Ross v. Creighton University, supra, 957 F.2d 410, the plaintiff alleged that the defendant university promised to provide him with an opportunity to obtain a meaningful education and a degree at the school in light of his significant academic limitations. Id., 411. The plaintiff's academic abilities differed significantly from the average student attending the defendant school. Id. The plaintiff alleged that he was induced to attend to play basketball for the defendant. Id. The court found that these allegations were more than a repackaging of the educational malpractice claims and were sufficient to state a cause of action for breach of contract. Id., 417. The court found that the complaint fairly alleged that the university made a specific promise that the plaintiff would be able to participate meaningfully in its academic program and it would provide specific services in order for him to do so. Id. The plaintiff CT Page 7485 alleged that the defendant breached their contract and denied him a real opportunity to participate in the academic program by failing to perform five specific commitments it had to the plaintiff. The court determined that such a claim could be adjudicated without assessing whether the services provided were deficient, but rather by determining whether the plaintiff had been provided with any real or meaningful access to the university's academic program at all. Id. The court explained that the inquiry would be an objective assessment of whether the defendant attempted to perform on its promise, rather than an inquiry into whether the school had provided a deficient education. Id.
As demonstrated by Wickstrom and Ross, the alleged fundamental failure of the educational program must be objectively measurable. A claim that invites inquiry into subjective aspects of a program, such as quality or methodology, implicates the policy considerations the court discussed in Guptav. New Britain Hospital, supra, 239 Conn. 591, in rejecting a breach of contract claim except in very limited situations. A breach of contract claim can only be maintained where it does not implicate those policies, i.e., where the inquiry constitutes an objective assessment.
In the present case, the plaintiffs allege in paragraph 6 of the second count of their complaint that Mead promised to provide their son "with the specialized reading attention that he needed . . . ." In paragraph 7 of the second count, the plaintiffs allege that the agreement was for the defendant to provide their son with "an education, including the specialized teaching, tutoring, training, education and resources that he required as a student diagnosed with and suffering from a specific learning disability." This court does not find a specific promise, as in Ross, when paragraphs 6 and 7 are read together. Instead, the promise alleged here essentially is one to provide the plaintiffs' son with an education that was appropriate and adequate for his needs. Such a promise is based on subjective criteria. An alleged breach of this promise would not be objectively measurable. The court would need to assess the quality and appropriateness of the course of instruction and teaching methods. For example, the plaintiffs allege that the defendant fundamentally failed by failing to teach their son to "read, write and perform arithmetic functions." Count two, ¶ 8 (c). Inquiry into a student's response to an educational program involves review of teaching methodologies, i.e., the very type of CT Page 7486 inquiry that courts have declined to engage in for the policy reasons discussed in Gupta v. New Britain Hospital, supra,239 Conn. 574.
The second instance identified by the court in Gupta where a breach of contract for inadequate education would be maintainable "would arise if the educational institution failed to fulfil a specific contractual promise distinct from any overall obligation to offer a reasonable program." Gupta v. New Britain Hospital, supra, 239 Conn. 592-93. The court cited two cases on this point — Cencor, Inc. v. Tolman, 868 P.2d 396 (Colo. 1994); andPaladino v. Adelphi University, 89 App.Div.2d 85,454 N.Y.S.2d 868 (1982).
In Cencor v. Tolman, supra, 868 P.2d 396, the Colorado Supreme Court held that a breach of contract action could be maintained against the defendant vocational school where there were allegations that the school had made specific promises, such as promises to provide modern, functioning equipment, computer training, and qualified instructors, and did not do so Id., 400. In Paladino v. Adelphi University, supra, 454 N.Y.S.2d 868, the court noted that a breach of contract action might lie if a school provided no educational services, or agreed to provide certain specific services such as a set number of hours of instruction, and failed to do so.
In the present case, the plaintiffs argue that the alleged promises, as set forth in the second count, were essentially to provide their son with an individualized educational curriculum. The plaintiffs, however, do not allege in the second count that the defendant promised to provide specific books, employ specific teaching methods, teach specific courses or take specific action if their son's grades were below a specific level. The plaintiffs do not allege that the defendant promised to provide "special education" within the meaning of General Statutes § 10-76a et seq., and/or to abide by the requirements imposed on public schools by § 10-76a et seq. This court finds that based on paragraphs 6 and 7, the defendant promised to provide Grant Tankoos with an education that would meet his needs, i.e., an appropriate and effective education. The promises alleged here are vague, and therefore, are not specific measurable obligations distinguishable from an overall obligation to provide a reasonable program.
This court concludes that the plaintiffs, in the second CT Page 7487 count, do no more than allege that the defendant had a deficient academic program and that their son received an inadequate, ineffective education. The court finds that the allegations in count two do not fall within the exceptions to the rule barring claims for inadequate education identified in Gupta.
The court rejects the plaintiffs' argument that granting the motion to strike would leave them without a remedy, which would shock the conscience of the framers of our Connecticut Constitution. The plaintiffs argue that because administrative remedies are not available to plaintiffs in Connecticut, but are available to plaintiffs in other jurisdictions such as New York, a policy of judicial noninterference in educational issues is inappropriate in Connecticut. The fact that Connecticut does not regulate private schools to the same extent as other jurisdictions, such as New York, that recognize actions based on claims of inadequate education only in very limited circumstances, cannot form the basis for expanding the availability of such a remedy in this state. The problems applying tort principles to these claims remain. The courts of this state are an inappropriate forum for setting educational standards and determining classroom policy. These tasks are better left to professional educators. Although this state exercises little supervision over private schools, our courts are ill equipped to act as educational watchdogs. The plaintiffs' argument is unpersuasive to this court and is more appropriately made to the legislature.
The court, therefore, grants the defendant's motion to strike count two.[1]
Count Three
Count three sounds in fraudulent misrepresentation. The defendant moves to strike on the grounds that it is precluded by: the reasoning of the cases rejecting a cause of action arising from educational services and that it fails to state a claim as it contains no alleged misrepresentations of fact.
"The elements of fraudulent misrepresentation are as follows: (1) a false representation must be made as to a statement of fact; (2) the statement was untrue and known by the defendant to be untrue; (3) the statement was made to induce the plaintiff to act; and (4) the plaintiff acted on the false representation to [its] detriment." (Internal quotation marks omitted.) WellingtonCT Page 7488Systems, Inc. v. Redding Group, Inc., 49 Conn. App. 152, 164,714 A.2d 21 (1998).
In Paladino v. Adelphi University, supra, 454 N.Y.S.2d 868, the court considered the plaintiffs' claims for fraudulent misrepresentation against the defendant school. There, the plaintiffs alleged that the defendant made representations that it was a school of the highest quality; it would provide an education superior to the public school system; it would provide the plaintiffs' son with individualized instruction in basic skills when needed; it would furnish periodic progress reports to the parents; and the plaintiffs' son was making adequate progress. Id., 873-74. The plaintiffs alleged that the representations were untrue in that the defendant did not provide their son with a quality education, the individualized instruction he needed, or a superior education to the public school, and that the defendant gave them false and misleading progress reports. Id., 874. The plaintiffs further alleged that the defendant made the representations to intentionally deceive the plaintiffs so that they would keep their son enrolled at the school and that the plaintiffs, in reliance on these representations, did keep their son enrolled. Id.
The court in Paladino determined that the misrepresentations alleged were not actionable, although it recognized that intentional torts against educators are viable actions. Paladinov. Adelphi University, supra, 454 N.Y.S.2d 874. The court explained that the alleged misrepresentations concerning the quality of the defendant's educational program were statements of opinion, not "statements of fact capable of proof." Id.
The court found that the record contradicted the alleged misrepresentations about the accuracy of the progress reports provided. Id. "Clearly the record fails to bear out the claim that the school made false representations to the parents. The reports were not only accurate, but contradict any claims that the school engaged in a planned course of deception." Id., 875. The court also found that the record did not support a finding of the alleged misrepresentations by the defendant that it would provide necessary tutoring to the plaintiffs' son. Regarding that claim, the court stated, "[w]here the misrepresentation is a promise to perform a service in the future, an action for [fraudulent misrepresentation] is not available and the plaintiff is relegated to contractual remedies unless it can be shown that the promisor had no intention of performing the future act at the CT Page 7489 time the promise was made . . . Since special attention was given . . . and tutoring was in fact provided, the statement of future intention was kept and may not provide a basis for recovery." (Citations omitted.) Id.
In the present case, the policy concerns underlying the Supreme Court's decision in Gupta v. New Britain Hospital, supra, 239 Conn. 574, preclude this court from allowing a cause of action to be maintained where an educational malpractice claim is simply dressed in different clothes. In the third count, the plaintiffs reallege many facts that invite an improper inquiry for the court and therefore, alone, would not support any cause of action.
The plaintiffs have also alleged, however, facts, which if provable, would support a cause of action for fraudulent misrepresentation. The plaintiffs allege, for example, that the defendant provided false and/or misleading reports regarding their son's progress. These allegations are the same as ones made, but rejected, in Paladino. The court in Paladino, however, did not reject a claim based on those allegations because they were statements of opinion, but rather rejected them because the evidence in the record contradicted them. This court, however, is faced with a motion to strike, whereas the court in Paladino was dealing with a motion for summary judgment and considered evidence in the record in deciding that the plaintiff could not maintain its claims for fraudulent misrepresentation. It is possible that the court might find, as in Paladino, that this count would not survive a motion for summary judgment. The court, however, is dealing with a motion to strike.
The motion to strike is used to test the sufficiency of a pleading. Peter-Michael, Inc. v. Sea Shell Associates, supra,244 Conn. 270-71. A court must deny a motion to strike if facts provable in the complaint would support a cause of action. In, the present case, for example, the plaintiffs' allegation that the defendant provided false or misleading progress reports relates to a misrepresentation of fact. The plaintiffs have alleged that the defendant made misrepresentations willfully in order to induce them to enroll their son and/or keep him enrolled, and they did keep him enrolled based on these misrepresentations and were injured. This court concludes that facts provable in the third count would support a cause of action for fraudulent misrepresentation. The motion to strike the third count, therefore, is denied. CT Page 7490
Count Four
Count four sounds in unjust enrichment. The defendant moves to strike on the ground that it is precluded by the reasoning of cases rejecting a cause of action arising from educational services.
"Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. 5 S. Williston, Contracts (Rev. Ed.) § 1479. A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Unjust enrichment is consistent with the principles of equity, a broad and flexible remedy. . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefit[t]ed, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs detriment." (Citations omitted; internal quotation marks omitted.) Hartford Whaler's Hockey Club v.Uniroyal Goodrich Tire Co., 231 Conn. 276, 282-83, 649 A.2d 518
(1994).
The plaintiffs argue that they have sufficiently pleaded the requisite elements for a claim of unjust enrichment and that that is the only inquiry for the court on a motion to strike. The plaintiffs oversimplify the court's task in ruling on a motion to strike. The court must determine whether the facts provable in the complaint would support a cause of action. Peter-Michael,Inc. v. Sea Shell Associates, supra, 244 Conn. 270-71. This determination requires the court to consider whether a cause of action is recognized in this state under the facts alleged, not simply to compare the complaint with a checklist of elements looking for certain magic words. A motion to strike "may [also] be used to test whether Connecticut is ready to recognize some newly emerging ground of liability." (Internal quotation marks omitted.) Burns v. Hanson, Superior Court, judicial district of CT Page 7491 at Docket No. 9472342 (March 8, 1995, Stanley, J.) Just as it is not necessary for the plaintiff to use talismanic words to make out a cause of action, it is possible to use talismanic words and still not allege facts sufficient to support a cause of action, such as where policy considerations do not allow recognition of such an action based on the facts alleged. This case presents such a situation.
Count four realleges paragraphs 1-10 of count three and further alleges that "[a]s a result of said fraudulent misrepresentations, the defendant has been unjustly enriched by its receipt of tuition payments by the plaintiffs, to the detriment of the plaintiffs." Count four, ¶ 11. The plaintiffs essentially allege that the defendant received the benefit of the tuition the plaintiffs paid; the defendant unjustly did not provide the promised educational services to the plaintiffs' son; and the failure of the defendant in providing said services was to the plaintiffs' detriment.
As the Supreme Court stated in Hartford Whaler's Hockey Clubv. Uniroyal Goodrich Tire Co., supra, 231 Conn. 282-83, a right of recovery for unjust enrichment is based on it being unjust, inequitable, or unconscionable for the defendant to retain the benefit conferred. In the present case, this type of determination involves the type of inquiry the court found impermissible in Gupta v. New Britain Hospital, supra,239 Conn. 574, in limiting breach of contract actions for educational services to two narrow situations, and rejecting an action for educational malpractice. In Gupta, the court rejected a cause of action based upon claims that focus on the reasonableness of conduct by schools in providing educational services to students. Id., 590. Inquiry into whether the defendant was unjustly enriched by receipt of the plaintiffs' tuition payments requires an examination of the quality and value of services provided in return. Under the reasoning of the Supreme Court in Gupta, actions that necessitate such an inquiry cannot be maintained whether they are brought as negligence, breach of contract or, as here, unjust enrichment claims. The plaintiffs cannot disguise their impermissible claims sounding in negligence and breach of contract as an unjust enrichment claim.
The plaintiffs assert that it would be dangerous to readGupta v. New Britain Hospital, supra, 239 Conn. 574, as immunizing private schools from liability for unjust enrichment. This court finds that striking this count prevents the plaintiffs CT Page 7492 from maintaining a claim that is impermissible under Gupta. The motion to strike count four is granted.
Count Six
In count six the plaintiffs allege a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[2] The plaintiffs reallege paragraphs 1-12 of count three (fraudulent misrepresentation) and paragraphs 1-15 of count five (tortious interference with plaintiffs' contract with a third party). They further allege that both they and the defendant are persons within the meaning of CUTPA, that the defendant was engaged in trade and commerce, and that the plaintiffs were consumers within the meaning of CUTPA. They allege that the actions of the defendant constitute unfair trade practices in violation of CUTPA. The defendant moves to strike on the ground that this CUTPA count is premised on the fraud and breach of contract claims, which must fail, and therefore, this claim must also fail.[3]
The court has found that the plaintiffs have alleged sufficient facts to state a cause of action for fraudulent misrepresentation, and therefore, is denying the defendant's motion to strike count three. The facts alleged in the fraud count (count three) are realleged in the sixth count and form the basis for the allegations of unfair trade practices. Because the alleged CUTPA violation is based on a cognizable fraud claim, the court finds that the plaintiffs have alleged facts sufficient to state a CUTPA claim. The defendant's motion. to strike count six is denied.
 Count Seven
In the seventh count the plaintiffs allege a cause of action based on "misappropriation and usurpation of parental rights and authority." The defendant moves to strike on the ground that this count fails to state a claim upon which relief can be granted. The defendant's motion to strike does not contain more specific grounds.[4] Where the defendant does "not specify the distinct reasons for the claimed insufficiency of the plaintiff's complaint in its motion, the motion [is] fatally defective under Practice Book § 154 notwithstanding the defendant's inclusion of such reasons in its supporting memorandum. . . ." Bouchard v.People's Bank, 219 Conn. 465. 468 n. 4, 594 A.2d 1 (1991). Such defect is waivable, however, "due to the plaintiff's failure to CT Page 7493 object to its form and the nonjurisdictional nature of § 154." Id. See also North Park Services Inc., v. Pinette, 27 Conn. App. 628,630, 608 A.2d 714 (1992). The court will consider the reasons specified in the defendant's memorandum, and argued before this court on October 26, 1998, i.e., that no such cause of action exists.
In count seven, the plaintiffs reallege paragraphs one through seven of count two (breach of contract) and further allege that the defendant prevented their son from bringing home schoolwork for them to review; had their son attend events such as presentations by practitioners of witchcraft, and members of the group ACT-UP, without the plaintiffs' knowledge or consent; and refused to reveal the contents of a note their son received at school which threatened to "burn his eyebrows off and bloody his nose." The plaintiffs assert that these actions constitute a misappropriation and usurpation of their exclusive parental rights and authority to make decisions regarding the health, education and welfare of their minor son.
The plaintiffs do not cite any Connecticut caselaw supporting such a cause of action. Instead they rely on two United States Supreme Court decisions Meyer v. Nebraska, 262 U.S. 390,43 S.Ct. 625 (1923), and Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208
(1972). In Meyer, the court held that the state's ability to interfere in the parent-child relationship is limited by thefourteenth amendment to the United States Constitution. Meyer v.Nebraska, supra, 262 U.S. 399-400. In Stanley, a case involving the termination of parental rights, the court again noted the importance of the right to raise one's children. Stanley v.Illinois, supra, 405 U.S. 651. The cases cited by the plaintiffs prescribe limits that the United States Constitution places on a state's ability to interfere with the parent-child relationship. These limits have been cited in Connecticut cases involving the termination of parental rights. See, e.g., In re Brianna F.,50 Conn. App. 805, 814, 719 A.2d 478 (1998). The present case, however, involves private individuals, not state actors. The plaintiffs contend that private actors are similarly precluded from interfering with a Connecticut parent's fundamental right, and obligation under General Statutes § 10-184, to educate his child.
General Statutes § 10-184, compels parents to educate their children from ages seven through sixteen. This statute does not require that children be educated in public schools. Parents, CT Page 7494 therefore, may choose to have their children educated in private schools. The plaintiffs in the present case chose to send their son to private school, i.e., Mead School, in satisfaction of: their statutory obligation.
A fair reading of the plaintiffs' allegations is that that they disapproved of policies and programs at the Mead School, and that by having their son attend and/or participate in activities that they find objectionable, Mead supplanted them as exclusive decisionmakers for their son. There are no allegations, however, that the defendant interfered with the custody of Grant Tankoos or prevented the plaintiffs from withdrawing their son from the Mead School at any time.
This court fails to see how, under the facts alleged, the cases or statute cited would provide the foundation for recognizing the cause of action advanced by the plaintiffs. This court finds no authority for recognizing a cause of action for misappropriation and usurpation of parental rights and authority in this state.
Accordingly, the court finds that count seven does not allege a cause of action and grants the defendant's motion to strike.
Prayer for relief
The plaintiffs' prayer for relief includes "prejudgment interest on all counts." The defendant moves to strike on the ground that the damages sought here are not liquidated sums subject to prejudgment interest.
A motion to strike is the proper method for attacking the legal sufficiency of any prayer for relief in a complaint. Practice Book § 10-39. A motion to strike will be granted if the relief sought cannot legally be awarded to the plaintiffs.Kavarco v. T.J.E., Inc., 2 Conn. App. 294, 298, 478 A.2d 257
(1984).
The plaintiffs argue that the tuition money paid to the defendant is a liquidated sum and, therefore, prejudgment interest pursuant to General Statutes § 37-3a is applicable. General Statutes § 37-3a provides in relevant part: "interest may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." "Section. 37-3a
provides a substantive right that applies only to certain CT Page 7495 claims. . . . It does not allow prejudgment interest on claims that are not yet payable . . . or on claims that do not involve the wrongful detention of money . . . . (Citations omitted.)Foley v. Huntington Co., 42 Conn. App. 712, 739, 682 A.2d 1026
(1996). "Under § 37-3a, an allowance of prejudgment interest turns on whether the detention of the money is or is not wrongful under the circumstances.'" Id.; See also Cecio Bros., Inc. v. Feldmann,161 Conn. 265, 287 A.2d 374 (1972) Prejudgment interest under General Statutes § 37-3a is applicable to "breach of contract claims for liquidated damages, namely, where a party claims that a specified sum under the terms of a contract, or a sum to be determined by the terms of the contract, owed to that party has been detained by another party." Foley v. Huntington Co., supra,42 Conn. App. 740. "[I]nterest awarded under the statute is intended to compensate the prevailing party for a delay in obtaining money that rightfully belongs to him." (Internal quotation marks omitted.) Id., 740 n. 11.
The plaintiffs allege that they entered into enrollment contracts with the Mead School and that they paid tuition in order for their son to attend. There are no allegations that the Mead School detained money that was due and payable to the plaintiffs. There are no allegations that Mead owed the plaintiffs a specified sum under a contract or a sum determinable from the terms of a contract. Furthermore, the court is granting the defendant's motion to strike the plaintiffs' claims for breach of contract (count two) and unjust enrichment (count four) based on the impermissible inquiry that these claims would require. The claims which remain after the court's decision on this motion to strike, i.e., fraudulent misrepresentation and CUTPA, are not claims whereby the plaintiffs "seek to regain money detained by another." Foley v. Huntington Co., supra,42 Conn. App. 742. Because the remaining claims do not involve the wrongful detention of money, the court finds that General Statutes § 37-3a is inapplicable. The defendant's motion to strike the plaintiffs' prayer for prejudgment interest, therefore, is granted.
SO ORDERED.
BY THE COURT,
TIERNEYJUDGE OF THE SUPERIOR COURT
CT Page 7496