[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter comes before the court on a motion for summary judgment. The parties have each submitted a memorandum with accompanying affidavit and other documentation. In this matter, the plaintiff Stephen Day has sued the Yale University School of Drama Repertory Theater, Dean S. Wojewondski, and Dean Earl Gister, both of the school (all collectively referred to as "Yale").
In the operative substitute complaint dated and filed April 14, 2000, the plaintiff claims breach of contract, CUTPA, and negligent misrepresentation (as to Dean Gister) against Yale arising out of his dismissal as a graduate student in Yale's program of study.
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted; internal quotation marks omitted.) Davies v. General Tours,Inc., 63 Conn. App. 17, 20-21, 774 A.2d 1063, cert. granted on other grounds, 256 Conn. 926, 776 A.2d 1143 (2001) (appeal withdrawn October 18, 2001).
"The party opposing a motion for summary judgment must present evidence that demonstrates the existence of some disputed factual issue . . . The existence of the genuine issue of material fact must be demonstrated by counter affidavits and concrete evidence." (Citation omitted; internal quotation marks omitted.) Pion v. Southern New England Telephone Co.,44 Conn. App. 657, 663, 691 A.2d 1107 (1997). Caruso v. Milford,75 Conn. App. 95, 98 (2003).
The evidence presented by Day, does not, as a matter of law, satisfy the requirements enunciated by the Supreme Court for a breach of contract CT Page 3540 claim in the educational environment.
"There are, however, at least two situations wherein courts will entertain a course of action for institutional breach of contract for educational services. The first would be exemplified by a showing that the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain arbitration in a particular field. See Wickston v. North Idaho College, Idaho, 450, 452,725 P.2d 155 (1986); Ross v. Creighton University, supra, 957 F.2d 4-117. The second would arise if the educational institution failed to fulfill a specific contractual promise distract from any overall obligation to offer a reasonable program. See, e.g., Ancon, Inc. v. Tolman, supra, 868 P.2d 399; Paladina v. Adelphi University, supra, 89 App.Div.2d 92."Gupta v. New Britain General Hospital, 239 Conn. 574, 592-93, 687 A.2d 111
(1996).
The plaintiff makes no claims in regard to the first and has not established any specific contractual promise by any of the defendants that has been breached.
The Gupta court also permits a claim where the plaintiff can successfully assert that Yale's termination of him resulted from arbitrary, capricious or bad faith conduct by the defendants.
". . . [W]e approach with caution, and with deference to academic decision making, the plaintiff's challenge to the motivation of the hospital in terminating his residency. "Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision making." Board of Curators v. Horowitz, supra, 435 U.S. 90; see also Regents of the University of Michigan v. Ewing, 474 U.S. 214,225-26, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985); Doherty v. Southern Collegeof Optometry, 862 F.2d 570, 576 (6th Cir. 1988), cert. denied,493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); Lekutis v. Universityof Osteopathic Medicine Health Services, 524 N.W.2d 410, 413 (Iowa 1994); Abbariao v. Hamline University School of Law, 258 N.W.2d 108, 112
(Minn. 1977); Olsson v. Board of Higher Education, 49 N.Y.2d 408, 416,402 N.E.2d 1150, 426 N.Y.S.2d 248 (1980); cf. Majavongsanan v. Hall,529 F.2d 448, 450 (5th Cir. 1976) (for dismissal grounded in disciplinary, rather than academic, reasons, courts appropriately may engage in more thorough due process analysis).
Educational discretion is, nonetheless, not limitless. The plaintiff CT Page 3541 properly observes that, in exercising its professional judgment, an educational institution does not have license to act arbitrarily, capriciously, or in bad faith. Such a substantial departure from academic norms may implicate substantive due process; see Regents of theUniversity of Michigan v. Ewing, supra, 474 U.S. 224; or may constitute the breach of an educational contract by a private institution. SeeDoherty v. Southern College of Optometry, supra, 862 F.2d 577 (implicit in contract is promise not to act capriciously or arbitrarily); Paulsenv. Golden Gate University, 25 Cal.3d 803, 808-09, 602 P.2d 778,159 Cal.Rptr. 858 (1979) (en banc) (applying arbitrary and capricious standard to private school).
In the present case, therefore, the issue is not the jurisprudential basis for the plaintiff's claim but its factual underpinning. The plaintiff bears a heavy burden in proving that his dismissal resulted from arbitrary, capricious, or bad faith conduct on the part of the hospital. To prevail, he must show that the hospital's decision had no "discernable rational basis." See Holert v. University of Chicago, 751 F. Sup. 1294,1301 (N.D.Ill. 1990). To rebut the hospital's motion for summary judgment, the plaintiff was required, therefore, to provide an evidentiary foundation to demonstrate the existence of material facts in this regard.fn18 See Doty v. Mucci, supra, 238 Conn. 805-06.
Gupta at 594-96.
Therefore, a review of the reasons for termination, as presented in the supporting affidavits and documents, is in order. Day was a drama student at Yale, admitted for the year 1993-94. All first year drama students are on probation. This included Day. Toward the end of that academic year, on May 16, 1994, Day was placed on probation for the next academic year for his excessive absences from class. The student handbook which is given to all drama students provides that, "Attendance at scheduled classes, special activities and school meetings is required in order to remain in good standing . . . lateness or unexcused absence will result in disciplinary action or dismissal from the school."
Day asserted that many of his absences resulted from health issues with diverticulitis and depression. While he did not seek an accommodation from Yale for these problems, nonetheless Gister offered him a medical leave, which he declined. The facts also disclose that Gister met with Day repeatedly during his second year of probation (1994-95) reminding him that his absences continued to be a problem, and, that his craft as an actor was not developing in a satisfactory manner in the judgment of Day's teachers and Gister. CT Page 3542
In May 1995, Gister informed Day that after a meeting of the faculty it was determined that Day, upon unanimous vote, was being asked to withdraw. Absent his agreement to do so, the faculty unanimously voted he should be dismissed as a student. That dismissal is what occurred. Day availed himself of the right to challenge the dismissal through a grievance process established at the school. After an investigation and hearing by the grievance board, the Dean's Advisory Committee on student grievance procedures determined that the dismissal was warranted, and, was consistent with the school's policies.
Day, in opposition to the motion for summary judgment, supplied transcripts of conversations with Dean Gister (in addition to those that had been included with defendants' motion) and a lengthy affidavit from Day, as well as his notes.
Day points to statements from Gister that his acting was improving in the latter half of his second academic year as support for the assertion that the decision to dismiss him was arbitrary and capricious.
This is not sufficient. The record is replete with thought out, rationale bases for his dismissal. Day, himself, acknowledges his absences were excessive. He argues that it was because of health problems that he had difficulty rising early in the morning. However, he failed to heed the Dean's suggestion that he either rise earlier or take a medical leave of absence. The Dean and faculty observed that Day had trouble developing his craft, in some part because of his absences. Those problems included memorizing lines, while he did progress somewhat by way of a good performance in "The Winter's Tale," the faculty and Dean felt that it was inadequate. These reasons constitute a rational basis for his dismissal. The excessive absences alone would have been a sufficient basis, under the Student Handbook, for dismissal. The court finds that the decision of the defendants to dismiss the plaintiff as a student finds a rational basis in the record presented. It does not constitute an arbitrary or capricious decision even with the record seen in the light most favorably to plaintiff. That plaintiff may have improved somewhat does not take the evidence to the point where it lacked a rational basis for dismissal.
The plaintiff's failure to put forth sufficient facts through supporting documentation to maintain his contract claim is dispositive of his CUTPA and negligent misrepresentation counts, as well.
The CUTPA count is a claim dependent on the survival of the contract claim, both pled on the same count. It therefore, must fail as well.Faigel v. Fairfield University, 75 Conn. App. 37, 44 (2003). CT Page 3543
The negligent misrepresentation claim against Gister alleges that "Gister negligently misrepresented the plaintiff's standing at the school to the plaintiff by assuring him that he was making adequate progress, and failing to let him know that concerns about his performance had risen to such a level as to warrant dismissal from the program."
The affidavits and other documentation disclose just the opposite. There is no material fact at issue that the plaintiff was told he was placed on probation, was told why he was placed on probation, and was warned throughout the probation that his performance was still lacking. While he was praised when he did well, he was never told that his absentee and performance problems had abated. There is simply no material fact at issue.
The motion for summary judgment on both counts of the substitute complaint dated April 14, 2000 is granted in favor of all the defendants.
Munro, J CT Page 3544