**WHITE CASTLE SYSTEM, INC., Appellant,**

v.

**Margaret C. BLOHM, individually and as Executor of the will of John Blohm, Albert J. Schick, as Executor of the will of John Blohm, Walter A. Beers, and Constantine Spiropoulos, Appellees.**

No. 82, Docket 86–7386.

United States Court of Appeals, Second Circuit.

Argued Nov. 5, 1986.

Decided Dec. 16, 1986.

Raymond T. Munsell, Windels, Marx, Davies & Ives, New York City, for appellant.

Jerome Karp, Brooklyn, N.Y., for appellees Blohm, Schick, and Beers.

Gregory D. Frost, Bower & Gardner, New York City, for appellee Spiropoulos.

Before LUMBARD, OAKES, and KEARSE, Circuit Judges.

OAKES, Circuit Judge:

This diversity case presents the question whether under New York law a right of first refusal to purchase contained in a lease agreement survives the termination of the lease where an agreement is made that the lessee will hold over from month to month. Following a two-day nonjury trial before the United States District Court for the Eastern District of New York, Jack B. Weinstein, Chief Judge, the court held that the intent of the parties was that the right of first refusal would not survive the termination of the lease and that New York law does not automatically provide for such survival irrespective of the parties' intent. We agree and accordingly affirm.

John Blohm, now deceased, leased the real estate located at 9201 Fourth Avenue, Brooklyn, New York, to White Castle System, Inc. ("White Castle"), on December 10, 1964, for a term ending on March 31, 1975, with two successive five-year renewal options, both of which were exercised. Thus, the lease termination date was March 31, 1985. Paragraph 18 of the lease provided that White Castle would have a right of first refusal to purchase the property.

By letter dated March 14, 1985, Walter A. Beers, the attorney representing the Blohm estate and its coexecutors, advised White Castle that it was to vacate the property at the end of the lease term and that "[t]here can be no negotiations for any continuance of any new tenancy." Beers testified that the executors had decided to sell the property but not to do so until after the termination of the White Castle lease. During a telephone conversation on March 21, 1985, Beers told James Sipp, White Castle's Director of Real Estate, that the

executors intended to sell the property to the highest bidder. In an intraoffice memorandum from Sipp to Nicholas W. Zuk, White Castle's associate counsel, regarding this conversation with Beers, Sipp stated, "I made every attempt to convince him that we were willing to buy the property and could close very quickly but he was not at all interested in any proposal I tried to make."

On March 22, 1985, Beers received a telephone call from Zuk and, according to Zuk, Beers indicated that the estate was not interested in continuing to lease the property but would rather sell. Zuk in turn told Beers that White Castle would like to buy, although it would not be interested in buying if it had to vacate the premises by March 31. Beers made it clear that the executors did not want White Castle to remain as year-to-year tenants but that if White Castle wanted to hold over beyond the lease termination date it could do so on a month-to-month basis. According to Zuk, neither he nor Beers ever even mentioned an extension of the right of first refusal. Zuk did, however, write a letter to Beers dated March 22, 1985, confirming the month-to-month tenancy with a thirty-day notice to vacate and containing a provision that "all other terms and conditions of the lease are to remain the same," with the request that Beers' client execute a copy of the letter.

According to Beers the phrase concerning "other terms and conditions" was something that they had not discussed; he certainly did not agree that the right of first refusal would continue. Neither Beers nor the executors signified approval of the terms stated in Zuk's letter.

The lease term and its renewals expired on March 31, 1985. On April 6, Beers received written offers to purchase the property from White Castle and from Constantine Spiropoulos. White Castle's offer was for $851,000, Spiropoulos's for $926,-000. Spiropoulos's offer was accepted and on April 11, 1985, a contract of sale was entered into at which point Beers returned to White Castle a copy of the March 22 letter indicating on it that the property had been sold. On April 12, 1985, White Castle indicated that it was "exercising its option to purchase" and on April 18, Beers, on behalf of the executors, rejected the purported exercise of the right of first refusal. The sale to Spiropoulos closed on May 14, 1985, after White Castle had brought suit in federal district court. Meanwhile, a remainderman under the Blohm will had sought an accounting and the removal and replacement of the Blohm executors in New Jersey state court. This action was dismissed with prejudice by consent on February 10, 1986, with the estate accepting the contract of sale to Spiropoulos.

Magistrate John L. Caden found in the instant action that Beers did not intend the holdover occupancy to operate as a continuation of the lease or of the right of first refusal and that Zuk, on behalf of White Castle, had the same understanding. The understanding was that White Castle could remain on the property from month to month if the estate did not sell it or if after April 1 White Castle bought it. Judge Weinstein reached the same conclusion, finding that no evidence had been submitted to show an agreement to extend the right of first refusal beyond March 31, 1985.

The district court's finding of fact that the parties intended the right of first refusal to terminate on March 31, 1985, is amply supported by evidence in the record and was not clearly erroneous. From Beers' testimony the court could quite properly find that Zuk, by the letter of March 22, 1985, was "trying to slip in" a continuation of the right of first refusal and was doing this "unilaterally ... not in agreement with [Beers]." The court did not have to believe Zuk's testimony that on March 26 he telephoned Beers to ask if Beers had any problems with the March 22 letter and received the reply that Beers did not, because Beers testified he did not remember such a conversation. Support for the court's finding comes especially from the fact that on April 2 White Castle submitted a written offer to the estate to purchase the property, an act that is inconsistent with the belief on its part that it continued to have the right of first refusal. Knowing that other bids were expected, it would have

been economically foolish for White Castle, if indeed it really thought it had a right of first refusal, to risk paying more than necessary as opposed to awaiting the highest bid and then matching it.

Given the above facts, we need not go further in terms of New York law. Thus we need not decide whether the holding in *Gulf Oil Corp. v. Buram Realty Co.*, 11 N.Y.2d 223, 182 N.E.2d 608, 228 N.Y.S.2d 225 (1962), that an option to purchase is not continued in a holdover tenancy unless the lease extension agreement specifically provides therefor, also covers rights of first refusal, though well it might. We note that White Castle relies on *Tubbs v. Hendrickson*, 88 Misc.2d 917, 390 N.Y.S.2d 791 (Sup.Ct.1976), for the converse proposition that a right of first refusal does automatically carry over into a holdover lease. But the language of *Tubbs* ("the parties are free to prove 'a changed condition of affairs,'" 88 Misc.2d at 919, 390 N.Y.S.2d at 793) indicates that the court would also look to the intent of the parties. The basic rule is as set forth in *Transit Drive-In Theater, Inc. v. Outdoor Theatre Caterers, Inc.*, 53 A.D.2d 1009, 386 N.Y.S.2d 482 (App.Div.1976), namely, that terms of a prior lease are not automatically implied in a holdover tenancy as a matter of law when, for example,

> the acts and conduct of the parties negate the existence of the original contract ...; or where the implication is inappropriate by reason of changed conditions ...; or where the circumstances tend to refute any intent to continue the applicability of a particular provision which is not an essential element of a landlord-tenant relationship....

*Id.* at 1009, 386 N.Y.S.2d at 483 (citations omitted). No authority cited by White Castle throws any doubt on the basic principle that a provision of the lease does not continue in the event of a holdover if both parties understand that it does not. Here, both the magistrate and the district court found that the parties understood that the right of first refusal was not to continue, and this understanding negates any implication of such a term into the holdover tenancy. Nor is the right of first refusal continued by virtue of N.Y. Real Prop.Law § 232-c (McKinney 1968), a statute that provides only that a holdover creates a month-to-month tenancy absent express or implied agreement otherwise.

White Castle also appeals Judge Weinstein's decision that Spiropoulos was a bona fide purchaser for value. Judge Weinstein made no factual finding on this point since no evidence was submitted. We see no problem with this, however, because the estate certainly does not disagree and because White Castle's complaint to the effect that Spiropoulos was aware of its existing contractual right to purchase and conspired and attempted to induce the estate to breach the lease was voluntarily withdrawn. Moreover, White Castle failed to object or take exception to the district court's finding, so there was no necessity for Spiropoulos to submit evidence on the issue of his bona fide purchaser status, and the issue cannot be raised on this appeal.

Judgment affirmed.