## PETER-MICHAEL, INC. *v.* SEA SHELL ASSOCIATES ET AL.
## (SC 15789)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued January 13—officially released March 31, 1998

*Max F. Brunswick*, for the appellant (plaintiff).

*Richard E. Minton,* for the appellee (named defendant).

*Eric R. Gaynor,* for the appellee (defendant Sand Dollar Development Group, LLC).

*Opinion*

NORCOTT, J. The dispositive issue in this appeal is whether the plaintiff, Peter-Michael, Inc., has stated a legally sufficient cause of action against the defendants, Sea Shell Associates (Sea Shell) and Sand Dollar Development Group, LLC (Sand Dollar), for breach of contract arising out of the defendants' alleged failure to offer the plaintiff a right of first refusal upon the sale of certain premises leased by the plaintiff. The defendants successfully moved to strike the plaintiff's complaint on the ground that the plaintiff's contractual right of first refusal did not carry over to its current holdover month-to-month tenancy. We reverse the judgment of the trial court striking the plaintiff's complaint.[1]

"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 580, 693 A.2d 293 (1997). "In an appeal from a judgment granting a motion to strike, we operate in accordance with well established principles." (Internal quotation marks omitted.) *Skuzinski* v. *Bouchard Fuels, Inc.*, 240 Conn. 694, 696, 694 A.2d 788 (1997). "[W]e must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. *Sassone* v. *Lepore*, 226

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023, now Practice Book (1998 Rev.) § 65-1, and General Statutes § 51-199 (c).

Conn. 773, 780, 629 A.2d 357 (1993); *Michaud* v. *Waw-ruck*, 209 Conn. 407, 408, 551 A.2d 738 (1988). *Waters* v. *Autuori*, 236 Conn. 820, 822, 676 A.2d 357 (1996)." (Internal quotation marks omitted.) *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 68, 700 A.2d 655 (1997). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Faulkner* v. *United Technologies Corp.*, supra, 580.

We assume as true the following facts as alleged in the plaintiff's complaint. On March 31, 1981, the plaintiff entered into a written lease agreement with Hadknight Associates, the predecessor in title to Sea Shell, for certain real property located in Cheshire, consisting of a movie theater and six stores. The lease agreement defined the term of the lease as a period of five years, beginning April 1, 1981, and ending March 31, 1986. The lease provided that the plaintiff had the option to extend the term of the lease for an additional five year period. If the plaintiff remained in possession of the premises after that time, the lessor could elect to treat the tenancy as a month-to-month tenancy. Specifically, paragraph twenty, which governed the month-to-month tenancy, provides in relevant part that "[i]n the event that the Tenant shall remain in the demised premises after the expiration of the term of this lease without having executed a new written lease with the Landlord, such holding over shall not constitute a renewal or extension of this lease. . . . [T]he Landlord may elect, at its option, to construe such holding over as a tenancy from month to month, *subject to all the terms and conditions of this lease, except as to duration thereof . . . .*" (Emphasis added.) The lease also contained a provision that, upon receipt by the lessor of a bona fide offer from a third party, the plaintiff had a right of first refusal to purchase

the property on the same terms and conditions. Specifically, paragraph A-6 of the lease addendum[2] provides in relevant part that "[i]n the event that, at any time *during the lease term*, Landlord shall receive a bona fide offer from any person to purchase the [leased] premises . . . Landlord shall give Tenant notice of the price and terms of such an offer and of the intention of the Landlord to accept the same. Tenant shall have the right for 15 days thereafter to purchase the leased premises in its own name . . . for the purchase price and on the terms specified in Landlord's notice. . . ." (Emphasis added.) During the first five year term, Hadknight Associates sold the premises to Sea Shell. The plaintiff exercised its option to extend the lease for an additional five year period from April 1, 1986, through March 31, 1991. Upon expiration of this second five year term in 1991, Sea Shell elected to treat the plaintiff as a month-to-month tenant in accordance with the terms of the lease. On March 29, 1996, Sea Shell sold the property to Sand Dollar. The plaintiff was neither notified of the terms of Sand Dollar's offer nor given an opportunity to purchase the property.

Thereafter, the plaintiff brought this complaint seeking specific performance of the contract and damages for breach of the contract.[3] The defendants moved to strike the plaintiff's complaint for failure to state a cause of action upon which relief could be granted asserting that, as a matter of law, the right of first refusal was limited to the additional five year lease term, which

[2] The addendum was executed as part of the lease. References in this opinion to certain paragraphs of the addendum are prefaced by the letter "A."

[3] Count one of the complaint sought specific performance of the contract by allowing the plaintiff to purchase the property from Sand Dollar for $75,000, the amount that Sand Dollar had paid to Sea Shell for the property. Count two sought damages that the plaintiff had incurred in maintaining possession of the premises by defending against a summary process action brought by Sand Dollar. Count three alleged a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.

ended on March 31, 1991. Accordingly, the defendants maintained that the plaintiff did not have a right of first refusal when Sea Shell sold the property to Sand Dollar in 1996. The trial court agreed and granted the defendants' motions to strike the plaintiff's complaint.[4]

The trial court focused exclusively on paragraph twenty of the lease and paragraph A-6 of the lease addendum in its analysis of whether the plaintiff's right of first refusal existed at the time that Sea Shell had sold the property to Sand Dollar in 1996. The court reasoned that paragraph A-6 "expressly conditioned" the plaintiff's right of first refusal "upon the landlord's receiving a bona fide offer to purchase 'at any time during the *lease term*.' " (Emphasis added.) The court then determined that the "lease term" was limited to the original five year period and the extension of the lease by the plaintiff for an additional five year term, and thus expired in 1991.

The trial court then examined paragraph twenty to determine the status of the month-to-month tenancy. In reconciling paragraphs A-6 and twenty, the court construed the word "term" used in paragraph A-6 as synonymous with the word "duration" used in paragraph twenty. On the basis of this construction, the court reasoned that because the "offer of purchase did not occur until the termination of the lease and its replacement by a holdover month-to-month tenancy that did not incorporate the duration of the original lease into its terms and conditions, the plaintiff did not have a right of first refusal with respect to any offer of purchase made after March 31, 1991." In addition, the trial court noted that "a number of other courts have suggested that a purchase option[5] or right of first refusal

---

[4] The trial court struck all three counts of the complaint, concluding that the determination of whether the plaintiff had a right of first refusal was "the linchpin of this case" and that the other counts were derivative.

[5] An option to purchase ordinarily grants the tenant an absolute right to purchase leased property. A right of first refusal, also known as a preemptive

does not survive the expiration of the formal lease term and conversion into a holdover month-to-month tenancy." This appeal followed.

The plaintiff argues that the trial court improperly granted the defendants' motion to strike because a factual determination should have been made as to whether the parties intended the right of first refusal to extend to the month-to-month tenancy. The plaintiff claims that the month-to-month tenancy reasonably could be construed as an extension of the lease because it was subject to all the terms and conditions of the lease. The plaintiff asserts that the text of the terms and conditions that applied to the month-to-month tenancy supports a conclusion that the holdover period constituted an extension of the lease, or at the very least, constitutes evidence that the lease is ambiguous. Under the plaintiff's construction, the complaint states a cause of action because the March 31, 1996 sale of the property occurred within the "lease term" and, accordingly, was subject to the plaintiff's right of first refusal.

The defendants argue that the trial court properly granted the motion to strike because the "clear and unambiguous language" of the lease establishes that the "lease term" does not encompass the holdover tenancy and, accordingly, the plaintiff's right of first refusal expired in 1991. The defendants contend that, despite the continuation of the terms and conditions of the lease, the month-to-month tenancy cannot be construed as an extension falling within the "lease term," because paragraph twenty expressly states that "such holding over shall not constitute a renewal or extension of this lease . . . ."

---

option, "confers upon the tenant a preferential right of purchase if the landlord decides to sell the leased property." R. Schoshinski, American Law of Landlord and Tenant (1980) § 9:9, p. 620. " 'A right of pre-emption is a right to buy before or ahead of others . . . but . . . only if the seller decides to sell.' " *Hare* v. *McClellan*, 234 Conn. 581, 588–89, 662 A.2d 1242 (1995).

In construing a written lease, which constitutes a written contract, "three elementary principles must be kept constantly in mind: (1) The intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. *Perkins* v. *Eagle Lock Co.*, 118 Conn. 658, 663, 174 A. 77 [1934]. *Ingalls* v. *Roger Smith Hotels Corporation*, 143 Conn. 1, 6, 118 A.2d 463 (1955); *Lonergan* v. *Connecticut Food Store, Inc.*, 168 Conn. 122, 128, 357 A.2d 910 (1975); *Collins* v. *Sears, Roebuck & Co.*, 164 Conn. 369, 373–74, 321 A.2d 444 (1973); *Perruccio* v. *Allen*, 156 Conn. 282, 285, 240 A.2d 912 (1968)." (Internal quotation marks omitted.) *Central New Haven Development Corp.* v. *La Crepe, Inc.*, 177 Conn. 212, 214–15, 413 A.2d 840 (1979).

We recognize that " '[t]he question whether an option to purchase contained in a lease can be exercised by a tenant during an additional term provided for in the lease, has been productive of much difficulty, and has produced many decisions which cannot be reconciled.' " *Ardito* v. *Howell*, 29 Del. Ch. 467, 471, 51 A.2d 859 (1947). "Language in leases making the option applicable 'during the term' or 'during the existence' of the lease is not helpful for this purpose because 'term' may be used with reference to both the original term and to extensions and renewals." 2 M. Friedman, Leases (4th Ed. 1997) § 15.4, p. 973. " 'It seems to be generally agreed that it depends upon the intention of the parties to be gathered from the lease itself.' " *Ardito* v. *Howell*, supra, 471. "Intent is a question of fact." *Costello* v. *Costello*, 139 Conn. 690, 695, 96 A.2d 755 (1953); see *Didriksen* v. *Havens*, 136 Conn. 41, 48, 68 A.2d 163

(1949). "[I]ntention is to be determined from the language used, the circumstances, the motives of the parties and the purposes which they sought to accomplish." *Klein* v. *Chatfield*, 166 Conn. 76, 80, 347 A.2d 58 (1974). A determination of contractual intent ordinarily presents a question of fact for the ultimate fact finder, although where the language is clear and unambiguous, it becomes a question of law for the court. *Water & Way Properties* v. *Colt's Mfg. Co.*, 230 Conn. 660, 667, 646 A.2d 143 (1994).

Mindful of these principles, we examine the relevant lease provisions in the present case. Paragraph twenty provides in pertinent part that the month-to-month tenancy is "subject to all the terms and conditions of this lease, except as to duration thereof . . . ." Paragraph A-6 provides that the right of first refusal is triggered by a bona fide offer made "at any time during the lease term . . . ." Although paragraph twenty states that the holdover tenancy does not constitute an extension, it also states that during this period the plaintiff is subject to all the terms and conditions of the lease, including the obligations to pay rent, make necessary repairs and replacements, and maintain liability and property insurance.

The defendants argue that had the parties intended that the holdover tenancy be an extension of the lease that incorporated the right of first refusal, they could have so drafted. They point to the text of paragraph A-1 as support for this proposition. Paragraph A-1, which the defendants concede applies to the holdover period, states that the tenant shall pay as additional rent 50 percent of any increase in real estate taxes and fire and extended coverage insurance "[d]uring the term of this lease *and any extension or renewal period* . . . ." (Emphasis added.) We are unpersuaded.

The terms of a lease may not be conclusive as to whether an extension exists and in that case, "disregarding labels and relying on the expectations of the parties . . . is the proper approach." 49 Am. Jur. 2d 156, Landlord and Tenant § 143 (1995); see *Carrano* v. *Shoor*, 118 Conn. 86, 93, 171 A. 17 (1934); *Blanck* v. *Kimland Realty Co.*, 122 Conn. 317, 318–19, 189 A. 176 (1937) (provision may be construed as extension of lease although it is called renewal). The text of paragraph A-1, to which the defendants direct our attention, does not necessarily support their argument that the month-to-month tenancy was not an extension. By its own terms, paragraph A-1 applies to an extension of the lease, and arguably was intended to apply to the holdover period.

We turn next to the text of the other terms and conditions contained in the lease to ascertain the language used to indicate their possible applicability to the holdover tenancy. Unlike paragraph A-1, paragraphs A-4, A-5 and A-8 do not contain the phrase "any extension or renewal period" nor were they consistently drafted, yet all were susceptible of an intention by both parties to apply to the month-to-month tenancy. Paragraph A-4 provides that the "[t]enant will, at all times *during the term*" provide liability insurance for the leased premises. (Emphasis added.) Paragraph A-5 provides that the tenant must maintain fire insurance "[f]or as long as *this Lease shall continue in effect* . . . ." (Emphasis added.) Paragraph A-8 provides that the landlord will repair if the premises are partially damaged by fire "*during said term* . . . ." (Emphasis added.) Our review of the language of these other provisions that the defendants admit might apply to the holdover tenancy leads us to conclude that the language is not definitive.

Finally, we are unpersuaded by the case law cited by the defendants.[6] Although these cases do conclude

---

[6] *White Castle System, Inc.* v. *Blohm*, 807 F.2d 313 (2d Cir. 1986) (appeal from trial); *Douglass* v. *Jones*, 422 So. 2d 352 (Fla. App. 1982) (appeal from

that a right of first refusal does not extend to a holdover tenancy, in general they were not decided in the same procedural posture as was the present case in which the sole issue was whether the complaint stated a legally sufficient cause of action. The only exception is *Andreula* v. *Slovak Gymnastic Union Sokol Assembly No. 223*, 140 N.J. Eq. 171, 53 A.2d 191 (1947), which was decided in a procedural posture similar to the present case without a determination of the parties' intent. In *Andreula*, the Court of Errors and Appeals of New Jersey affirmed the dismissal of the plaintiff's action seeking the enforcement of a right of first refusal. Id., 174. The court reasoned that the purchase option could not be enforced because "[t]here [was] no criterion or standard [in the lease] establish[ing] by which the price may be determined with certainty . . . ." Id., 173. As further justification for the dismissal of the complaint, the court stated that as a matter of law, "[a]n option to purchase contained in a written lease cannot be exercised after the expiration of the written lease by a tenant holding over since it is a collateral contract, independent of the lease."[7] Id., 174. That conclusion, however, is inconsistent with *Didriksen* v. *Havens*, supra, 136 Conn. 41, in which this court considered whether an option to purchase continued as an extension of the lease. The court recognized "that the weight of authority and the Connecticut rule favor the continuance of the option to purchase"; id., 45; and concluded

judgment ordering specific performance); *Carroll* v. *Daigle*, 123 N.H. 495, 463 A.2d 885 (1983) (appeal from declaratory judgment); *Gulf Oil Corp.* v. *Buram Realty Co.*, 11 N.Y.2d 223, 182 N.E.2d 608, 228 N.Y.S.2d 225 (1962) (appeal from summary judgment); *Power Test Petroleum Distributors, Inc.* v. *Baker-Tripi Realty Corp.*, 190 App. Div. 2d 845, 594 N.Y.S.2d 266 (1993) (appeal from trial); *Vernon* v. *Kennedy*, 50 N.C. App. 302, 273 S.E.2d 31 (1981) (appeal from summary judgment); *Grisham* v. *Lowery*, 621 S.W.2d 745 (Tenn. App. 1981) (appeal from trial).

[7] The doctrine that the lease and the option to purchase constitute two separate contracts is "contrary to the great weight of authority in the United States . . . ." (Citations omitted.) *Shuford Development Co.* v. *Chrysler Corp.*, 449 F.2d 429, 434 (5th Cir. 1971).

that the option to purchase was an integral part of a lease, inseparably connected to the lease, and supported by " 'common and indivisible consideration.' " Id.

In view of the equivocal language of the provisions applicable to the month-to-month tenancy and the absence of definitive language excluding the right of first refusal during the holdover tenancy, we are persuaded that the lease is ambiguous with respect to the parties' intent to limit the right of first refusal to the five year lease periods.[8] "Bearing in mind our responsibility to construe the complaint 'in the manner most favorable to sustaining its legal sufficiency' "; *Warner* v. *Konover*, 210 Conn. 150, 156, 553 A.2d 1138 (1989); we conclude that the plaintiff's allegations that the defendants failed to provide it with a right of first refusal state a cause of action that is legally sufficient to have survived a motion to strike. See *Gressitt* v. *Anderson*, 187 Md. 586, 591–92, 51 A.2d 159 (1947) (complaint alleging option to purchase carried over to holdover tenancy not demurrable).

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

---

[8] Although we conclude that the plaintiff has pleaded a cause of action, we express no opinion as to the ultimate question of whether the defendants breached the lease by not affording the plaintiff a right of first refusal to purchase the property in 1996. See *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 86.