[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM RE: MOTION TO STRIKE #177
This is a Motion to strike the plaintiffs second amended complaint. The allegations of that amended complaint (amended Complaint) filed on August 20, 1999, are as follows. On August 21, 1995, the plaintiff was referred to the Waterbury Hospital CT Page 2384 Crisis Center by her doctor to seek medication for an acute problem. The defendant Chartouni, a physician, asked the plaintiff if she was going to hurt herself or felt like huffing someone else, to which the plaintiff replied in the negative. The defendant Chartouni asked the plaintiff if she had ever been raped. The plaintiff began to experience emotional distress in response to the defendant's question. The plaintiff attempted to leave the crisis center, but was unable to due to her frightened state of mind. The defendant Chartouni told the plaintiff that if she would accompany her to the emergency department of the Waterbury Hospital, she would receive the medication she needed. The plaintiff went with the defendant Chartouni to the emergency department where the defendant Chartouni instructed the staff that the plaintiff was to be detained and to use security staff.
The plaintiff asserts that the defendant Ricurpo, a nurse, told the defendant that she would have to enter the seclusion room as required by hospital policy. The plaintiff claims that the defendant, Waterbury Hospital's policy is to lock all persons who enter the emergency department seeking psychiatric treatment in a seclusion room, search the patients clothing and remove the patients clothing from their presence prior to the patient's mental status exam.
The plaintiff further claims that the defendant Chartouni prevented the plaintiff from completing a telephone conversation with the plaintiff's husband. The plaintiff alleges that two of the defendants, Christen and Panilaitis, security officers of the hospital, picked the plaintiff up by the arms and legs and carried her into the seclusion room. The plaintiff alleges that she refused to take off her clothes in front of the male security officers. The plaintiff claims that she was told that if she did not take off her clothes, the security officers would take the clothes off for her. The plaintiff alleges that she took off her clothes with one of the male security officers in the room. The plaintiff further asserts that her clothes were taken from her and she was left in the seclusion room for over an hour before she was examined by Ronald Hong, M.D., who determined that the plaintiff was not a danger to herself or others and ordered the plaintiff discharged from the hospital.
The amended complaint contains nine counts. The first count alleges a violation of the Patient's Bill of Rights, General Statutes § 17a-542. The second count alleges a Consumer Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., CT Page 2385 violation. The third count alleges assault. The fourth count alleges battery. The fifth count alleges false imprisonment. The sixth count alleges invasion of privacy. The seventh count alleges intentional infliction of emotional distress. The eighth count alleges medical malpractice in tort. Lastly, the ninth count alleges a violation of the Americans With Disabilities Act,42 U.S.C. § 12181.
The defendants move to strike the entire complaint asserting that the plaintiff has failed to file a good faith certificate as required by General Statutes § 52-190a. Additionally, the defendants move to strike the first, second, eight and ninth counts on the grounds that they fail to state sufficient causes of action in their motion to strike. Lastly the defendants move to strike the plaintiff's request for injunctive relief claiming that the plaintiff has failed to allege that she has no remedy at law.
At oral argument the parties stipulated that the plaintiff had filed a timely good faith certificate, thus the complaint need not be stricken for the reasons cited in General Statutes § 52-190a; and that the eighth count need not be stricken because it states a sufficient cause of action. Lastly, the parties stipulated that the plaintiff's claim for injunctive relief should be stricken. The court will address the remaining issues pertaining to the first, second and ninth counts.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael. Inc. v. Sea ShellAssociates, 244 Conn. 269, 270, 709 A.2d 558 (1998). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Faulkner v. United Technologies Corporation,240 Conn. 576, 580, 693 A.2d 293 (1997). The court "must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.)Peter-Michael. Inc. v. Sea Shell Associates, supra, 270-71. "Moreover, . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Citations omitted.) Pamela B. v.Ment, 244 Conn. 296, 308, 709 A.2d 1089 (1998). CT Page 2386
I. Count One: Violation of the Patients' Bill of Rights
The defendants claim that the plaintiff's allegation of a violation General Statutes § 17a-542, the patient's bill of rights, is nothing more than a claim of negligence recast in a different light. Section 17a-542 provides in pertinent part "[e]very patient treated in any facility for treatment of persons with psychiatric disabilities shall receive humane and dignified treatment at all times, with full respect for his personal dignity and right to privacy."
"In enacting [17a-542], the legislature created a statutory cause of action that established a new tort liability, unknown to the common law, and therefore independent of common law negligence." Mahoney v. Lensink, 213 Conn. 548, 562, 569 A.2d 518
(1990). The court in Mahoney noted the legislature's broad intent for the patient's bill of rights when they stated that "[s]everal provisions of the patients' bill of rights illuminate the breadth of the legislative concern for the fair treatment of mental patients. Because the patients bill of rights is remedial in nature, its provisions should be liberally construed in favor of the class sought to be benefitted [benefited]." Id., 556.
The plaintiff complains in the first count that she was injured because she did not receive humane and dignified treatment as a result of the actions taken by the defendant employees of the defendant Waterbury Hospital. As noted by the plaintiff in her response to the defendant's motion to strike, the factual basis for her claim that the defendants violated the patient's bill of rights is similar to the basis for her claim of medical malpractice in tort in the eighth count, however the allegations are different. The first count finds fault with the alleged inhumane and undignified treatment of the plaintiff resulting when the defendant employees of Waterbury Hospital forced the plaintiff into a secluded room and forced her to disrobe while in the presence of a male security guard. The first count is not based upon negligence, but intentional conduct. Whereas, the eighth count, sounding in medical malpractice, contains an allegation that the defendants negligently failed to provide the plaintiff with a prompt and adequate mental status examination prior to implementing force.
Although the first count and the eighth count arise from the same factual circumstance, the first count is not negligence recast. Viewing the facts alleged in the complaint and reasonable CT Page 2387 inferences in favor of the plaintiffs, the court concludes that the defendants' motion to strike the first count is denied because the first count adequately states a claim upon which relief can be granted under the patient bill of rights and therefore is legally sufficient.
II. Count 2: CUTPA Violation
The defendants next claim that the second count, in which the plaintiff alleges that the defendant Waterbury Hospital acted unfairly or deceptively in the conduct of a trade or commerce in violation of the CUTPA, fails to state a legally cognizant cause of action.
CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b. "It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the `cigarette rule'[1] by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness: (2) whether it is immoral, unethical, oppressive, or unscrupulous; (2) whether it causes substantial injury to consumers. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree of which it meets one of the criteria or because to a lesser extent it meets all three."Hartford Electric Supply Co. v. Allen-Bradley Co., 250 Conn. 334,367-68, 736 A.2d 824 (1999). "Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy."Associated Investment Co., Ltd. Partnership v. WilliamsAssociates IV, 230 Conn. 148, 156, 645 A.2d 505 (1994).
"The provision of medical services falls within CUTPA's definition of trade or commerce as "the distribution of any services. . . ." General Statutes § 42-110a (4)." Haynes v. Yale-New Haven Hospital, 243 Conn. 17, 32, 699 A.2d 964 (1997) (en banc). "Although physicians and health care providers are subject to CUTPA, only the entrepreneurial or commercial aspects of the profession are covered by CUTPA." Id., 34. "[O]nly CT Page 2388 allegations of unfair, unconscionable, or deceptive methods, acts or practices in the conduct of the entrepreneurial, commercial, or business aspect of a physician's practice may be brought under the [consumer protection act]. Allegations that concern misconduct in the actual performance of medical services or the actual practice of medicine would be improper." Id., 37. The actions of which the plaintiff complains are not entrepreneurial or commercial aspects of the medical profession. The plaintiff alleges that the defendant Chartouni's conduct was unfair and deceptive because she made misrepresentations concerning when the plaintiff could go home. The plaintiff alleges also that the defendant Ricupero's conduct was unfair and deceptive. Lastly the plaintiff alleges that the conduct of the defendant security officers violated the public policy expressed in the patient's bill of rights, General Statutes § 17a-542. The actions complained of concern the treatment of the plaintiff while at the hospital, not entrepreneurial or commercial functions of Waterbury Hospital. While considering the facts alleged in the complaint in the light most favorable to the plaintiff, the court determines that the defendants' motion to strike the second count should be granted as the plaintiff has not stated a claim that is legally sufficient to state a cause of action under CUTPA.
III. Count Nine: American with Disabilities Act
Lastly, the defendants allege that the plaintiff has failed to state a legally sufficient claim upon which relief can be granted in the ninth count in which the plaintiff claims that the defendants violated the plaintiff's rights under the Americans With Disabilities Act (ADA), 42 U.S.C. § 12181 et seq. The plaintiff alleges that the defendants violated the ADA when they carried the plaintiff into a seclusion room and forced her to disrobe and searched her clothing and possessions because she has a mental illness. The defendants argue that the ADA applies only if the defendants denied the plaintiff access or opportunity to participate in any activity not if they physically separated the plaintiff from other individuals.
The ADA at 42 U.S.C. § 12182 (a) provides in pertinent part that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Additionally, 42 U.S.C. § 12182 (b)(1)(A)(3) provides in pertinent CT Page 2389 part that "it shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide that individual or class or individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others."
There is no dispute that the defendant Waterbury Hospital is a public accommodation under the ADA or that the plaintiff is disabled under the ADA. The only dispute is whether the alleged segregation of the plaintiff is legally sufficient to state a claim of discrimination. The plaintiff alleges that she was improperly segregated from the rest of the emergency department patients on the basis of her disability. Thus the question for the court is whether the plaintiff's alleged forced segregation and disrobement on the basis that she was mentally ill was discrimination under the ADA.
The legislative intent of the United States Congress is evident in the findings stated in 42 U.S.C. § 12101 (a)(2) which provides that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive problem." Furthermore, the United States Third Circuit Court of Appeals has found that "the ADA and its attendant regulations clearly define unnecessary segregation as a form of illegal discrimination against the disabled." Helen L. DiDario, 46 F.3d 325, 333 (3rd
Cir. 1995). A United States District Court has also held that "[d]iscrimination in public accommodation can take the form of the denial of the opportunity to receive medical treatment, segregation unnecessary for the provision of effective medical treatment, unnecessary screening or eligibility requirements for treatment, or provision of unequal medical benefits based upon the disability." Howe v. Hull, 873 F. Sup. 72, 78 (N.D.Ohio 1994).
The plaintiff effectively alleges that her segregation from the rest of the emergency department because she is mentally ill was unnecessary for the provision of effective treatment. Upon consideration of the facts alleged in the complaint in the light most favorable to the plaintiff, the court therefore finds that CT Page 2390 the plaintiff has stated a legally sufficient claim that would support a cause of action for which relief may be granted for discrimination under the ADA.
Lastly, the defendants claim that even if the plaintiff has stated a cause of action for discrimination, they are nevertheless protected under 42 U.S.C. § 12182 (b)(3), because the plaintiff constituted a direct threat to the safety of others.42 U.S.C. § 12182 (b)(3) provides that "[n]othing in this subchapter shall require an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity where such individual poses a direct threat to the health and safety of others. The term "direct threat" means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services."
Thus, the next issue for the court to determine is whether, under the facts as alleged in the plaintiff's complaint, allowing the plaintiff to remain in the public area of the emergency department of Waterbury Hospital would constitute a direct threat to the health and safety of others. "The existence, or nonexistence, of a significant risk must be determined from the standpoint of the person who refuses the treatment or accommodation, and the risk assessment must be based on medical or other objective evidence." Bragdon v. Abbott, 524 U.S. 624,118 S.Ct. 2196, 2210, 141 L.Ed.2d 540 (1998). The court cannot determine on the facts alleged in the plaintiff's complaint that the plaintiff constituted a direct threat to the health and safety of others, and therefore, the court finds that the plaintiff has stated a legally sufficient cause of action in the ninth count.
For the foregoing reasons and by the stipulated agreement of the parties during oral argument on the motion to strike, the Court finds as follows. The defendants' motion to strike the entire complaint, and the first, eighth, and ninth counts of the complaint is denied. The defendants' motion to strike the second count and the request for injunctive relief is granted.
PELLEGRINO, (J).