[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Studio Zee, LLC, initiated the present action against the defendants, The Edge Tattoo Company (The Edge) and New Mass. Media, Inc., d/b/a The New Haven Advocate (The Advocate), on April 4, 2001. The plaintiff filed a second amended complaint with four counts on September 17, 2001. Counts one and two respectively allege bad faith breach of contact and negligent and/or reckless misrepresentation against The Advocate. Counts one and two arise out of the following facts. Between the years 1996 and 2000, the plaintiff entered into written contacts with The Advocate for the purpose of advertising. The plaintiff alleges that it entered into the contacts for the purpose of advertising its position in the "Best of New Haven" contest run by The Advocate. The plaintiff alleges that in the months of February, March and May, 2000, its competitor, The Edge, advertised in The Advocate. The Edge's advertisement was allegedly false and deceptive because the advertisement made it appear that The Edge won the "Best of New Haven" contest, when in reality it had placed third.
The first count alleges that The Advocate was aware of The Edge's deceptive advertisement and that The Advocate failed to properly review the advertisement despite its knowledge that the advertisement was misleading. The plaintiff alleges that, by allowing The Edge to place the deceptive advertisement, The Advocate breached its contract with the plaintiff Specifically, the plaintiff alleges tat The Advocate acted in bad faith by allowing The Edge to place the advertisement.
The second count asserts a negligent and/or reckless misrepresentation claim against The Advocate. The plaintiff alleges tat The Advocate was aware tat The Edge's advertisement was deceptive and tat, by publishing the advertisement, it failed to protect the integrity of the "Best of New Haven" contest. The plaintiff further alleges that, through its CT Page 3939 representative, Robin Ungaro, The Advocate induced the plaintiff to invest in advertising wit The Advocate so that in return, The Advocate would give recognition to the plaintiff in the "Best of New Haven" contest.
In response to the second amended complaint, The Advocate filed a motion to strike counts one and two on October 5, 2001, on the grounds that the plaintiff did not allege that The Advocate had a contractual obligation to review the advertisements for accuracy and that it cannot be held liable in tort for misrepresentation because it did not have a "direct financial interest in the product or services being advertised." The Advocate also filed a memorandum in support of the motion to strike.
The plaintiff filed an opposing memorandum to The Advocate's motion to strike on October 22, 2001. The plaintiff argues that The Advocate had an implied duty to ensure that it published true and accurate advertisements and that The Advocate should not be absolutely immune from a common law claim of misrepresentation.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). Pursuant to Practice Book § 10-39(a), "[w]henever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint, counterclaim or cross claim, or of any one or more counts thereof, to state a claim upon which relief can be granted . . . tat party may do so by filing a motion to strike the contested pleading or part thereof" "[F]or the purpose of a motion to strike, the moving party admits all facts well pleaded." RK Constructors, Inc. v.Fusco Corp., 231 Conn. 381, 383 n. 2, 650 A.2d 153 (1994). "The court must construe the facts in the complaint most favorably to the plaintiff" (Internal quotation marks omitted.) Faulkner v. United TechnologiesCorp., 240 Conn. 576, 580, 693 A.2d 293 (1997). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems, Inc. v.BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992).
The Advocate moves to strike the first count of the second amended complaint, arguing that the claim does not allege a contractual obligation on the part of The Advocate to review advertisements for accuracy. Absent a contractual obligation to review advertisements for accuracy, The Advocate argues, it cannot be liable for a bad faith breach of contract. The plaintiff argues in opposition that The Advocate breached the implied covenant of good faith and fair dealing tat is present in all contracts by knowingly publishing The Edge's deceptive CT Page 3940 advertisement.
In order to state a claim for breach of the duty of good faith and fair dealing, there must be a contract between the parties. Hoskins v. TitanValue Equities Group, Inc., 252 Conn. 789, 793, 749 A.2d 1144 (2000). "Every contract carries an implied covenant of good faith and fair dealing requiring tat neither party do anything that will injure the right of the other to receive the benefits of the agreement." Habetz v.Condon, 224 Conn. 231, 238, 618 A.2d 501 (1992). While every contract contains the implied covenant of good faith and fair dealing, "[t]he principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." (Internal quotation marks omitted.)Southbridge Associates v. Garofalo, 53 Conn. App. 1, 16, 728 A.2d 1114, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999). "The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term." (Internal quotation marks omitted.) Hoskins v. Titan Value EquitiesGroup, Inc., supra, 793.
The plaintiff alleges that The Advocate failed to check properly the accuracy of The Edge's advertisement and, therefore, breached the implied covenant of good faith and fair dealing. In order for there to be a breach of the implied covenant, however, the agreed upon common purpose or intent of the advertising contract between the parties must have been such as would obligate The Advocate to check the accuracy or review the content of advertisements of the plaintiffs competitors tat it publishes. See Foley v. Huntington Co., 42 Conn. App. 712, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996). The plaintiff has failed to allege such facts or any provisions of the contract that would enable a trier of fact to reach this conclusion. Thus, count one is legally insufficient and the motion to strike count one is granted.
The Advocate argues that count two should be stricken because it cannot be held liable for negligent or reckless misrepresentation. The Advocate asserts that General Statutes § 42-110c[1] of the Connecticut Unfair Trade Practices Act (CUTPA) insulates it from liability for common law misrepresentation. The Advocate argues that the exemption from liability for CUTPA claims in § 42-110c that applies to newspapers, periodicals and radio and television stations that do not have a "direct financial interest in the sale or distribution of the advertised product or service" insulates it from common law misrepresentation claims. General Statutes § 42-110c (a)(2). In contrast, the plaintiff argues that there is no authority to support The Advocate's position tat CUTPA extends its protections to newspapers and other sources of media from CT Page 3941 liability for common law tort claims.
Connecticut has "long recognized liability for negligent misrepresentation." (Internal quotation marks omitted.) Williams Ford,Inc. v. Hartford Courant Co., 232 Conn. 559, 575, 657 A.2d 212 (1995). The Restatement (Second) of Torts provides: "One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care of competence in obtaining or communicating the information." 2 Restatement (Second), Torts, Misrepresentation § 552, p. 126 (1977). A claim of reckless or intentional misrepresentation requires the same elements as negligent misrepresentation except that the claimant must prove that the party made the misrepresentation "to induce the other party to act upon it." Weisman v. Kaspar, 233 Conn. 531, 539, 661 A.2d 530 (1995). Reckless misrepresentation requires "[t]he intent to defraud." DeLuca v. C.W.Blakeslee Sons, Inc., 174 Conn. 535, 546, 391 A.2d 170 (1978).
A claim for misrepresentation under CUTPA, however, is different from a claim of common law misrepresentation. "The CUTPA plaintiff need not prove reliance or tat the representation became part of the basis of the bargain." Hinchliffe v. American Motors Corp., 184 Conn. 607, 617,440 A.2d 810 (1981). Furthermore, "[t]he plaintiff who establishes CUTPA liability has access to a remedy far more comprehensive than the simple damages recoverable under common law. The ability to recover both attorneys' fees; General Statutes § 42-110g (d); and punitive damages; General Statutes § 42-110g (a); enhances the private CUTPA remedy and serves to encourage private CUTPA litigation." Id. Thus, CUTPA allows for different damages and provides different elements for a claim of misrepresentation ten a claim of common law misrepresentation. A CUTPA claim, therefore, does not supercede or replace a common law misrepresentation claim.
The Advocate argues that § 42-110c (a) exempts it from liability from claims of misrepresentation. General Statutes § 42-110c (a)(2) provides that "[n]othing in this chapter shall apply to . . . (2) acts done by the publisher, owner, agent or employee of a newspaper, periodical or radio or television station in the publication or dissemination of an advertisement, where the publisher . . . did not have knowledge of the false, misleading, unfair or deceptive character of the advertisement, and did not have direct financial interest in the sale of distribution of the advertised product or service." This provision is aimed at protecting the media from CUTPA claims of misrepresentation. It does not suggest that it protects the media from claims of common law misrepresentation. Moreover, The Advocate provides no authority, and the CT Page 3942 court knows of none, that suggests that § 42-110c of CUTPA protects the media from common law misrepresentation claims. The Advocate, therefore, is not protected by CUTPA against common claims of misrepresentation. Thus, The Advocate's motion to strike count two is denied.
For the foregoing reasons, The Advocate's motion to strike count one is granted, and the motion to strike count two is denied.
 ___________________ Howard F. Zoarski, Judge Trial Referee