[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
In this case, eight professional firefighters employed by the Long Ridge Fire Company, Inc. ("Long Ridge F.C.), a volunteer fire company in the City of Stamford, Connecticut ("City"), have joined with their local employee organization, the Long Ridge Paid Drivers Association ("LRPDA"), to bring suit against two defendants: Local 786 of the International Association of Firefighters ("Local 786"), a larger employee organization to which they and all other paid Stamford firefighters belong, and James Romaniello, the president of Local 786.
In Count One of their Third Amended Complaint dated December 10, 1997 ("Complaint"), the individual plaintiffs claim that Local 786 breached its duty of fair representation to them by engaging in a bad faith course of conduct designed to promote the interests of certain of its members — those employed by the City and based in the Stamford Fire and Rescue Department — at the expense of the plaintiffs and other members employed by the several volunteer fire companies in the City. The plaintiffs claim that Local 786's duty of fair representation arises from its "represent[ation of] them in collective bargaining and in administration of the collective bargaining agreement." Complaint, Count I, ¶ 6. "Local 786," the plaintiffs allege, "approves contract demands; it negotiates and executes the contracts; and it controls the grievance/arbitration procedure." Id. Local 786 allegedly violated its "duty to serve the interests of all union members without hostility or discrimination toward any, to exercise its discretion in complete good faith and honesty, and to avoid arbitrary conduct" by engaging in the following types of "arbitrary, capricious, discriminatory and bad faith conduct:"
 a) causing the removal of the plaintiffs from Station 2 of the Long Ridge Fire Company, Inc.;
b) endangering the lives and property of the plaintiffs, the Long Ridge Fire Company, Inc. and the residents of Long Ridge, and harming the plaintiffs in other ways; CT Page 10145
c) declaring the plaintiffs members of a rival organization;
d) disciplining the plaintiffs for opposing the scheme;
 e) trying to divert money, which supports the Long Ridge Fire Company, Inc., and the plaintiffs' wages and benefits, to themselves and their favored members;
 f) sabotaging discussions among the plaintiffs, the Long Ridge Fire Co., the City and other volunteer companies;
 g) turning members of other volunteer companies, city officials and residents, and the rank-and-file of Local 786 against the plaintiffs;
h) forcing members of the Long Ridge Fire Company to resign;
i) attempting to reduce the salaries and benefits of the plaintiffs;
 j) conspiring to interfere with the plaintiffs' liberty, associational, and property interests.
Complaint, Count I, ¶ 12.
In Count Two of the Complaint, the LRPDA joins with the individual plaintiffs in suing both Local 786 and Mr. Romaniello for alleged "interference with . . . the contractual and beneficial relations the plaintiffs have with their employees and with the City and its residents."Id., Count II, ¶ 19. In support of this claim, the plaintiffs allege: that the individual plaintiffs are members of the LRPDA as well as Local 786; id., ¶ 15; that "[t]he LRPDA was certified in 1977 by the State Board of Labor Relations ("SBLR") as collective bargaining representative of the professional employees of the Long Ridge [F.C.]";id., ¶ 16; that "in 1988, the LRPDA affiliated with Local 786 and delegated many of its collective bargaining responsibilities to Local 786"; id., ¶ 17; that "Local 786 accepted LRPDA's delegation of these duties"; id. that "the LRPDA has opposed" many of defendants' bad faith, discriminatory actions, as alleged in Count One; id., ¶ 18; and that in retaliation for such opposition, Local 786 and Mr. Romaniello have tried to destroy the LRPDA, or to render it ineffective, and thereby deprive the individual plaintiffs of their rights. Id.
The case is now before the Court on the defendants' Motion to Strike Count One of the Third Amended Complaint, which was filed on or about June 4, 1998. In their Motion and supporting Memorandum of Law, the defendants claim, inter alia,[1][2] that Count One fails to state a valid claim for breach of the duty of fair representation because it CT Page 10146 fails to allege that at the time of its alleged breach of duty, Local 786 had been designated by the State Board of Labor Relations as the "exclusive representative" of the paid employees of the Long Ridge F.C. According to the defendants, a Connecticut employee organization's duty of fair representation to its members has always been understood to arise from its special status and responsibilities as their "exclusive representative" for collective bargaining purposes. Initially implied from the text of our state labor statutes, just as a comparable duty had been implied from almost identical federal labor statutes in Vaca v.Sipes, 386 U.S. 171, 17 L.Ed.2d 842, 87 S.Ct. 903 (1967), the duty of fair representation has since been codified in General Statutes § 7-468
(d) as follows:
 When an employee organization has been designated in accordance with the provisions of sections 7-467 to 7-477, inclusive, as the exclusive representative of employees in an appropriate unit, it shall have a duty of fair representation to the members of that unit.
Insisting that the duty of fair representation extends no further than this statute expressly provides, the defendants argue that Count One must be stricken for failure to allege that Local 786 was ever designated as the exclusive representative of any employee unit to which the plaintiffs belonged.
The plaintiffs oppose the defendants' motion by arguing that since all Connecticut employee organizations are subject to the same state labor statutes, they all owe the same duty of fair representation to their members, whether or not they have been designated by the SBLR as the exclusive representatives of the particular employee units to which their members belong. The plaintiffs therefore argue that they have a right to bring an action for breach of the duty of fair representation against Local 786 without pleading and proving facts essential to establishing violation of that duty under General Statutes § 7-468 (d).
For the following reasons, the Court concludes that the Motion to Strike should be granted.
 I
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted. . . ." Peter-Michael, Inc. v. Sea ShellAssociates, 244 Conn. 269, 270-71, 709 A.2d 558 (1998). The court "takes the facts to be those alleged in the complaint . . . and we construe the complaint in the manner most favorable to sustaining its legal CT Page 10147 sufficiency . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted.) Gazo v. Stamford, 255 Conn. 245, 260, 765 A.2d 505
(2001). "It is fundamental that in determining the sufficiency of a complaint challenged by a defendants motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically." (Citations omitted.) Id.
 II
The central question presented on this motion is whether or not a Connecticut employee organization's duty of fair representation is governed exclusively by General Statutes § 7-468 (d), which became law with the passage of Public Act 93-426 on October 1, 1993. If it is, then Count One of the plaintiff's Complaint must be stricken for failure to allege that at the time of the alleged breach of its duty of fair representation, Local 786 had been designated by the SBLR as the exclusive representative of the employees of the Long Ridge F.C.
The legislative history of General Statutes § 7-468 (d) clearly shows that the legislature's two related purposes for enacting it were as follows: first, to codify the existing duty of fair representation, as it had been recognized and defined in Connecticut case law up to 1993; and second, to make any breach of that duty a prohibited act or practice under subsection (3) of General Statutes § 7-470 (b), which was added to that statute as part of Public Act 93-426, and thus to require any employee claiming breach of that duty to file his claim initially as a complaint with the SBLR rather than an action in Superior Court. These purposes were detailed with unusual clarity by the discussion that took place on the floor of the House of Representatives shortly before it was passed.
The legislation was first explained as follows by Representative Michael Lawlor, who presented the proposed legislation to his colleagues on behalf of the Labor Committee:
Senate Amendment `B' adjusts the duty of fair representation law imposing on all public employee unions a duty of fair representation. Also, [it] requires that any complaints . . . under a duty of fair representation complaint by an individual state employee or municipal employee be brought directly to the State Board of Labor Relations instead of to the Superior Court. CT Page 10148
36 H.R.Proc., Pt. 36, 1993 Session, p. 12898-12899. According to Representative Lawlor, the Labor Committee had approved the new legislation in response to a recent Superior Court decision —Spadola v. Amity Regional Board of Education, Superior Court, Judicial District of New Haven, Docket No. 610642 (October 16, 1992, Levin, J.) (7 C.S.C.R. 1342) — which had permitted an employee to bring a lawsuit for breach of the duty of fair representation without first bringing his claim before the SBLR. The Committee believed that an administrative hearing before the SBLR, with a later right of appeal to this Court, if necessary, was a less costly and more efficient way to resolve claims for breach of the duty of fair representation than a lawsuit. 36 H.R.Proc., Pt. 36, 1993 Session, p. 12898. (Remarks of Representative Lawlor).
After making his initial presentation as aforesaid, Representative Lawlor had the following, illuminating exchange with Representative Robert Ward as to how, if at all, current law would change if the new legislation were passed:
 REP. WARD: Representative Lawlor, . . . prior to that court decision, was it clear in the law that the bargaining union did owe a duty of fair representation to the members of that union? I see that we are codifying that I thought it always was the law. Through you, Madam Speaker, is this just a codification of current law or a change in current law?
DEPUTY SPEAKER LYONS: Representative Lawlor.
 REP. LAWLOR: Through you, Madam Speaker, it is a codification of what had been the case law prior to this.
DEPUTY SPEAKER LYONS: Representative Ward.
 REP. WARD: Through you, Madam Speaker, then the only real change is that if an employee who was dissatisfied with the level of representation wants to bring a claim against the union, they start the process with the State Labor Board. Is that correct? Through you, Madam Speaker.
DEPUTY SPEAKER LYONS: Representative Lawlor.
REP. LAWLOR: Through you, Madam Speaker. That is the major change, yes. CT Page 10149
DEPUTY SPEAKER LYONS: Representative Ward.
 REP. WARD: This applies to essentially teacher collective bargaining. Is that correct? Through you, Madam Speaker.
DEPUTY SPEAKER LYONS: Representative Lawlor.
 REP. LAWLOR: Through you, Madam Speaker, state and municipal employees and teachers, yes.
DEPUTY SPEAKER LYONS: Representative Ward.
 REP. WARD: Through you, Madam Speaker, prior to that court decision, were these kinds of claims generally brought to the State Labor Relations Board or were they always brought to court? Through you, Madam Speaker.
DEPUTY SPEAKER LYONS: Representative Lawlor.
 REP. LAWLOR: Through you, Madam Speaker. At the option of the complainant, either.
DEPUTY SPEAKER LYONS: Representative Ward.
 REP. WARD: And with this law, the disgruntled employee, if you will or union member, would not have the option? Is that correct? Through you, Madam Speaker.
DEPUTY SPEAKER LYONS: Representative Lawlor.
 REP. LAWLOR: Would not have the option at the first level, but would be required to go to the State Board and then if not satisfied there, could appeal it to the Superior Court.
36 H.R.Proc., Pt. 36, 1993 Session, pp. 12902-12904.
Following this colloquy, just before the measure was put to a vote, Representative Lawlor concluded his remarks on the new legislation with the following reminder as to its essential benefit:
I would just like to point out that I think it is much easier to first bring your complaint to the State Board than to initiate a court action. I don't think to the CT Page 10150 extent people have made these claims, I don't think they really rise to the level of energy, the level of a problem you would need to justify bringing a case to court. This would somewhat simplify the process. If it couldn't be worked out by the State Board, then they would have the option of going to Superior Court.
36 H.R.Proc., Pt. 36, 1993 Session, p. 12907-908. (Remarks of Representative Lawlor).
The implications of this legislative history for the issue before this Court are very clear. First, as Representative Lawlor expressly stated, the new statute was intended to codify existing law on the duty of fair representation. Therefore, since no part of existing law was to be excluded from its scope, the pleading and proof requirements of the statute were intended to apply to all future claims of breach of duty of fair representation. Therefore, failure to plead even one of its essential elements must result in the striking of the plaintiff's challenged claim.
Secondly, and no less importantly, the new legislation was specifically intended to require all persons bringing claims for breach of the duty of fair representation to file their claims initially with the SBLR. The stated reason for imposing that requirement was to save time and money in resolving such claims, for both individual claimants and the courts. In the legislative history, there is no suggestion that this rule should have any exceptions. Not surprisingly, then, the text of the statute makes no exceptions either. It can hardly be imagined that, in adopting this new procedural requirement, the legislature intended to except some unmentioned class or group of claims or claimants from its reach. Therefore, if the statute can fairly be understood to direct that all claims of breach of duty of fair representation be filed in the first instance with the SBLR, it must also be understood to apply the substantive requirements of the statute to all such claims. Again, failure to plead even one such essential element in a challenged count requires the striking of that count for failure to state a claim upon which relief can be granted.
The plaintiffs have argued that a union can be found to owe a duty of fair representation to its members even without being designated as their exclusive representative by the SBLR. That, however, would be inconsistent with Connecticut law prior to the enactment of Section 7-468
(d).
Following the lead of the federal courts, which had ruled that the National Labor Relations Act ("NLRA") imposed an implicit duty of fair CT Page 10151 representation upon any union empowered thereunder to serve as the exclusive agent or representative of its members for collective bargaining purposes,[3] Connecticut courts ruled that nearly identical language in our State labor statutes[4] imposed a comparable duty of fair representation on any employee organization that exercised exclusive powers to represent its members' interests under those statutes. Thus three years after Section 7-468 (d) became law, though in a case which had arisen before the statute was enacted, the Connecticut Supreme Court made the following explicit linkage between the exclusive nature of the employee organization's right to represent its members under our State labor statutes and its implicit duty of fair representation:
 A union must represent its members in good faith. This duty of fair representation derives from the union's status as the sole bargaining representative for its members. As such, the union has the exclusive right and obligation to act for its members and to represent their interests. . . . Because the individual members are thereby deprived of the opportunity to represent themselves, or to select a minority union, this duty of fair representation is a necessary bulwark to prevent arbitrary union conduct. (Citations omitted; emphasis added).
Labbe v. Hartford Pension Commission, 239 Conn. 168, 194 (1996). In light of this unambiguous holding, there is no basis for claiming, as does the plaintiff, that the duty of fair representation has ever been based, or could ever be based, on anything less than an employee organization's exercise of exclusive statutory powers on behalf of its members.
Based on the foregoing observations and analysis, the Court is persuaded that no valid claim for breach of the duty of fair representation can be made in this State without pleading and proving all the facts that establish the existence of such a duty under General Statutes § 7-468 (d). In particular, the Court finds that the plaintiff must plead and prove that by the time of the defendant's alleged breach of that duty, it actually had such a duty by virtue of its designation by the State Labor Board as the "exclusive representative" of a group of employees to which the plaintiffs belonged. Absent such an allegation, the plaintiff's pleading is insufficient as a matter of law, and must be stricken.
 CONCLUSION
For all of the foregoing reasons, the Court hereby GRANTS the defendants' Motion to Strike Count One of the Third Amended Complaint. CT Page 10152
IT IS SO ORDERED this 3rd day of August, 2002.
___________________, J.
Michael R. Sheldon