[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
Defendants Bayer Corporation ("Bayer") and GlaxoSmithKline[1] have moved to strike all of the first two counts and much of the third count of the complaint filed by the three plaintiffs, Rose A. Lavoie, Julie Baumann and Florence Babiak. The plaintiffs seek damages for their use of Baycol and/or Lipobay ("Baycol"), an anti-cholesterol drug that they claim was ineffective and was marketed and sold by the defendants in violation of Connecticut's antitrust and unfair trade practices acts.
The defendants assert that this court should strike the first count, which is titled "Negligent Misrepresentation," because the plaintiffs have failed to plead that they justifiably relied on any representations by the defendants. The defendants also challenge the legal sufficiency of the second count, on the ground that the plaintiffs have failed to allege an injury for which the Connecticut Antitrust Act, Conn. Gen. Stat. § 35-24 et seq., provides a remedy. The movants move to strike the part of the third count in which the plaintiffs assert that the conduct that they allege violates the antitrust act also constitutes a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq., and they move to strike the plaintiffs' assertion that they represent a class of plaintiffs in connection with the CUTPA claim.
Standard of Review on Motion to Strike
The function of a motion to strike is to test the legal sufficiency of the allegations of a complaint to state a claim upon which relief can be granted. Sherwood v. Danbury Hospital, 252 Conn. 193, 213 (2000);Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270-71
(1998); Novametrix Medical Systems, Inc. v. BOC Group, Inc., 224 Conn. 210,214-215 (1992); Ferryman v. Groton, 212 Conn. 138, 142 (1989); Practice Book § 10-39. The role of the trial court is to examine the complaint, construed in favor of the pleader, to determine whether the pleader has stated a legally sufficient cause of action. ATC Partnershipv. Windham, 251 Conn. 597, 603, cert. denied, 120 S.Ct. 2217 (1999); Doddv. Middlesex Mutual Assurance Co., 242 Conn. 375, 378 (1997); Napoletanov. CIGNA Healtheare of Connecticut, Inc., 238 Conn. 216, 232-33, cert. denied, 520 U.S. 1103 (1990).
In adjudicating a motion to strike, the court must construe the facts CT Page 748 alleged in the complaint in the manner most favorable to the plaintiffGazo v. Stamford, 255 Conn. 245, 260 (2001); Peter-Michael, Inc. v. SeaShell Associates, supra, 244 Conn. 270; Bohan v. Last, 236 Conn. 670, 675
(1996); Sassone v. Lepore, 226 Conn. 773, 780 (1993); Novametrix MedicalSystems, Inc. v. BOC Group, Inc., supra, 224 Conn. 215; Gordon v.Bridgeport Housing Authority, 208 Conn. 161, 170 (1988). The court must also construe the complaint "in the manner most favorable to sustaining its legal sufficiency." Peter-Michael, Inc. v. Sea Shell Associates, supra, 244 Conn. 279 (1998); Warner v. Konover, 210 Conn. 150, 156
(1989).
The requirement of favorable construction does not extend, however, to legal opinions or conclusions stated in the complaint, but only to factual allegations and the facts "necessarily implied and fairly provable under the allegations." Forbes v. Ballaro, 31 Conn. App. 235, 239
(1993).
Connecticut's appellate courts have stated that conclusory statements or statements of legal effect not supported by allegations of fact will not enable a complaint to withstand a motion to strike. Mingachos v.CBS, Inc., 196 Conn. 91, 108 (1985); Fortini v. New England Log Homes,Inc., 4 Conn. App. 132, 134-35, cert. dismissed, 197 Conn. 801 (1985); however, they have accepted very summary or general allegations as sufficient to withstand a motion to strike. For example, in D'Ulisse-Cupov. Board of Directors, 202 Conn. 206 (1987), the Court found that a plaintiff who alleged that the defendants "negligently misrepresented the facts to the plaintiff" had stated a cause of action for negligent misrepresentation even though the plaintiff did not allege the precise conduct that she claimed was negligent. In Bohan v. Last, 236 Conn. 670,675 (1996), a case brought under the Dram Shop Act, the Court ruled that a plaintiff who did not allege that defendants owned or operated the bar where a tortfeasor was served alcoholic beverages but only that they "purveyed them" to him had stated a cause of action, despite the lack of any actual allegations about what the defendants were doing that constituted "purveying."
Count One — Negligent Misrepresentation
In the first count of their complaint, the plaintiffs allege that Bayer, a pharmaceutical manufacturer with its North American headquarters in West Haven, Connecticut and GlaxoSmithKline "the co-marketer of Baycol" with its headquarters in Philadelphia, Pennsylvania, sold a product known as Baycol "and/or Lipobay" between 1997 and August 8, 2001, and that they misrepresented the efficacy of this drug to medical professionals and consumers when they "knew or should have known that [Baycol] was not safe and effective for the reduction of plasma CT Page 749 cholesterol." (August 23, 2002 Complaint, para. 15.) They allege that the defendants engaged in a "course of conduct. . . to provide and/or substitute Baycol to consumers in place of other `statin' drugs. . .. despite the fact that Baycol was less effective and/or safe than competitive products." (Complaint, para. 16.) The plaintiffs do not claim that they sustained any personal injury from ingestion of Baycol, rather they allege that they have been "economically damaged" because "the defendants made negligently false representations to the plaintiffs and other class members so as to cause the sale of Baycol." (Complaint, paras. 20, 21.)
The movants base their motion to strike the plaintiffs' claim for negligent misrepresentation on the fact that the plaintiffs have not explicitly alleged that they relied on any statement alleged to be a misrepresentation. The plaintiffs have alleged that the defendants engaged in a campaign of advertising and publicity concerning the efficacy of Baycol and that "[a]s a result of defendants' conduct as aforesaid, the plaintiffs and other class members have been economically damaged." (Complaint, para. 21.)
In D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra, 202 Conn. 217-18, the Connecticut Supreme Court ruled that the elements of a cause of action for negligent misrepresentation are those set forth § 552 of the Restatement Second of Torts (1979): supplying information that the speaker knows or in exercise of reasonable care should know is false on which the claimant justifiably relies, where such reliance leads to injury or loss. In D'Ulisse-Cupo v. Board ofDirectors, supra, 202 Conn. 208, the Court discussed both the elements of this cause of action and the pleading requirements for stating such a cause of action. The Court noted that the plaintiff had alleged that "the defendant negligently misrepresented the facts to the plaintiff,"202 Conn. 220, and that "plaintiff relied to her detriment on [the defendant's] representations," id. 218 n. 5. The Court stated that the plaintiff did not need to plead in the precise language of the Restatement, and it ruled that the somewhat conclusory allegations quoted above, along with some factual allegations stating what the defendants had said, were sufficient to state a cause of action for negligent misrepresentation. D'Ulisse-Cupo is silent on the issue whether a plaintiff must allege facts concerning each element of this cause of action.
The plaintiffs in this case have not set forth any specific facts on the element of reliance. They have, however, alleged that they took Baycol `as a result of' the defendants' marketing efforts. Under this rather thin allegation, they would be entitled to present evidence concerning the manner in which that result occurred, that is, evidence of CT Page 750 their reliance on marketing claims. As the Supreme Court stated in Bohanv. Last, supra, 236 Conn. 675, even if the complaint contains a "sparsity" of facts, for purposes of a motion to strike a court must assume that evidence is available to give content to the sparse facts alleged on an element of the cause of action.
The movants cite Muniz v. Kravis, 59 Conn. App. 704, 709 (2000), as confirmation that a plaintiff must include in his or her complaint factual allegations of each element of the cause of action asserted. The Appellate Court discussed the elements of the cause of action in that case; however, the actual ground for its ruling was that the complaint lacks facts but that the facts alleged did not amount to extreme and outrageous conduct, an element of a cause of action for intentional infliction of emotional distress. Id.
The movants have cited no case in which the Connecticut Supreme Court required detailed factual allegations regarding each element of a cause of action; rather, the liberal standard of Bohan v. Last, supra, has prevailed. Connecticut rules of pleading require that a plaintiff set forth the facts that support a finding of that legal effect. The second example supplied in Practice Book § 10-2 is "the obligation of a husband to pay for necessaries furnished to his wife, whom he has driven from his house, should be stated according to the facts." This example apparently means that a plaintiff who has furnished items to an estranged wife must plead not the conclusion that the defendant husband is liable for cost of merchandise but must identify what the items were, so that the characterization of "necessaries" may be assessed, and must set forth the fact that items were furnished to the wife of the defendant, not to the defendant himself.
The retention in the Connecticut Practice Book of §§ 10-1 and 10-2
constitutes a continued requirement that a plaintiff may not simply name a cause of action or plead a legal conclusion but must set forth the facts material to such a cause of action. The requirement of fact pleading reflects an apparent choice in the economics of litigation. If a plaintiff is not required to plead the facts that support his or her claimed cause of action, the case may go all the way through a trial before the absence of such facts is known. Requiring an opponent to go through the expenditure of time and money necessary for a full trial imposes a heavy burden on a party that is ultimately not liable and rewards a party who brings a claim that is not recognized at law. The reward comes in the form of the ability to extract a settlement from a defendant who must decide whether a settlement is less costly than a trial. Pursuit of a case in which the claimant cannot plead or prove the facts that support the cause of action claimed may, of course, ultimately waste the resources of the unsuccessful plaintiff as well.
The Supreme Court's approach to this issue is somewhat difficult to understand in the context of other Practice Book provisions and the interests of preservation of the parties' and judicial resources. Despite occasional suggestions that Connecticut's courts should consider adopting the federal practice of notice pleading in civil cases, the Connecticut Practice Book continues to require fact pleading. The requirements of fact pleading are stated in §§ 10-1 and 10-2 of the Practice Book. The former provision requires that "[e]ach pleading shall contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they are to be proved.. ." The latter provision explains that while "[a]cts and contracts may be stated according to their legal effect, ... in so doing the pleading should be such as fairly to apprise the adverse party of the state of the facts which it is intended to prove." The requirement is thus not simply to identify a doctrine, cause of action or legal conclusion but to state the material facts, that is, the facts material to the cause of action asserted.
At Section 10-2, the Practice Book furnishes illustrations of the difference between pleading a doctrine or conclusion or liability and pleading fact. The first example provided in § 10-2 is as follows: "Thus an act or promise by a principal . . . if in fact proceeding from an agent known to the pleader, should be so stated." In other words, a plaintiff may not plead that the principal contracted with the plaintiff and is liable for breach of contract, but must plead that the person who entered into the contract was an agent of the principal. The principal's CT Page 751 liability for the acts of the agent is the legal effect of the agent's act in contracting; however, the rule providing that a party may move to strike a pleading that fails to state a claim, Practice Book § 10-39, permits resolution at an early stage of claims not supported by facts that entitle the claimant to a remedy. A plaintiff who omits material facts by mistake has an opportunity pursuant to Practice Book § 10-44 to replead to state the omitted facts that are crucial to stating a cause of action. The burden of repleading is slight compared to the burden of defending to the conclusion of a trial a claim that is not supported by material facts constituting a cognizable cause of action. The requirement of fact pleading is consonant with economic efficiency and the preservation of resources of the parties. The requirement also conserves the resources of the courts by allowing cases whose facts do not support a cause of action to be resolved on motion rather than by full trial.
The plaintiffs in the case before this court have asserted in their brief in opposition to the motion to strike that "[c]learly the CT Page 752 Plaintiffs relied upon the globally communicated misrepresentations concerning safety, efficacy and comparability or they would have rejected the drug as an equivalent substitute for the other statins available to them." (Plaintiffs' brief, p. 4.) If that is so, the plaintiffs should have had no difficulty setting forth that factual allegation in their complaint for what representations were or were not being made concerning the efficacy of Baycol, and their apparent reluctance to do so is unaccountable. The movants suggest that the plaintiff failed to include any details concerning their reliance because such allegations would present difficulties when the plaintiffs move to certify the matter as a class action. This speculation seems off the mark; Whether the plaintiffs allege this element sparsely, as they have, or fulsomely, the issue of different proof for different class members on the element of reliance may be raised in connection with a motion for class certification.
Under the standard for review of pleadings adopted by the Connecticut Supreme Court, the motion to strike the first count is denied.
Count Two — Antitrust Violation
The three plaintiffs allege in the second count of their complaint that defendant Bayer violated the Connecticut Antitrust Act, § 35-24 et seq., and that defendant GlaxoSmithKline "participated in the establishment and/or continuation of Bayer's pricing strategy." The plaintiffs have not identified the particular provision of the Act that they claim the defendants violated. The plaintiffs' factual allegations in support of this claim are as follows:
 (1) they each have purchased and ingested a specific formulation of cerivastatin sodium tablets, the proprietary formulation of which is known by the registered mark Baycol and/or Lipobay . . . and have suffered economic loss as a consequence thereof (complaint, para. 1); (2) Bayer misrepresented the safety and efficacy of Baycol to medical professionals and consumers (complaint, paras. 11 and 12); and (3) Bayer "engaged in a course of conduct designed to price Baycol at a level not otherwise economically supportable for the purpose of securing market share from other `statin' drug manufacturers," sacrificing short term revenues on the expectation of recouping losses after driving competitors from the market and to induce physicians to prescribe and consumers to purchase the drug "so as to maximize Bayer's market share and potential profits, without regard to inherent efficacy or safety of Baycol" (complaint CT Page 753 paras. 13, 14).
The plaintiffs allege that the defendants' conduct "was anticompetitive and harmful to consumers who purchased an inferior product based on the artificially low price." (Complaint, para. 25.)
The plaintiffs thus assert that the price of Baycol was set too low in a predatory pricing scheme and that the low price led the plaintiffs to use a drug that was allegedly less effective than higher price drugs. The plaintiffs have not alleged whether they purchased the drug directly from Bayer or whether they obtained it from doctors or by purchase through pharmacies.
The defendants base their motion to strike this count on two doctrines: 1) that the plaintiffs assert an injury that is not an "antitrust injury," that is, an injury of the type the antitrust statute was designed to prevent or redress, and 2) that as indirect purchasers the plaintiffs lack standing to assert a claim of predatory pricing.
A. Connecticut's Antitrust Act
Connecticut General Statute § 35-35 provides for recovery of treble damages and counsel fees by "[t]he state, or any person, including but not limited to a consumer, injured in its business or property by an violation of the provisions of this chapter." Section 35-44b provides that in construing Connecticut's Antitrust Act, this state's courts "shall be guided by interpretations by the federal courts to federal antitrust statutes." The Connecticut Supreme Court has explained that this provision means that "we follow federal precedent when we interpret the act unless the text of our antitrust statutes or other pertinent state law, requires us to interpret it differently." Westport TaxiService, Inc. v. Westport Transit District, 235 Conn. 1, 15-16 (1995). The plaintiffs have not claimed that Connecticut law imposes a different interpretation from federal law regarding any of the issues raised by the defendants in their motion to strike.
B. Standing to assert a claim for damages under the antitrust act
The movants assert that the plaintiffs do not state a cause of action because they lack standing to raise an antitrust claim concerning the conduct alleged. The federal courts have ruled that in determining whether a particular plaintiff has standing to seek damages under the antitrust statutes, courts must look to 1) whether the plaintiff has alleged an "antitrust injury," that is, whether the injury is one that the antitrust laws were intended to forestall; 2) the directness of the injury; 3) the existence of more direct victims; 4) the risk of CT Page 754 duplicative relief; and 5) the complexity of the task of apportioning damages. Associated General Contractors of California v. California StateCouncil of Carpenters, 459 U.S. 519, 539-546 (1983); National Associationof Pharmaceutical Manufacturers v. Ayerst Laboratories, 850 F.2d 904 (2d Cir. 1988); In re Air Passenger Computer Research Systems, 727 F. Sup. 564
(C.D.Cal. 1989).
Even a plaintiff who has alleged that a defendant has engaged in conduct that is a per se violation of the antitrust statutes may lack standing if he or she does not allege injury that constitutes an antitrust injury. Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328
(1990); and even a plaintiff who has suffered an antitrust injury may be found to lack standing because another variety of plaintiff, such as a competitor, may have suffered a more direct injury and therefore constitute a more appropriate enforcer. Cargill, Inc. v. Manford ofColorado, Inc., 479 U.S. 104 (1986).
Have plaintiffs alleged an "antitrust injury?"
The injury that the plaintiffs allege is not injury to competition. They admit that the effect of the defendants' pricing practice was to let Bayer produce Baycol at a lower price than the price for competitors' products. The essence of the plaintiffs' claim is that the defendants sold a drug that the plaintiffs allege was ineffective. While they allege that the defendants used means prohibited finder antitrust law, that is, predatory pricing, they do not allege that the injury was inflicted on competition, nor do they allege, as in Blue Shield of Virginia v.McCready, 457 U.S. 465, 472 (1982), that the business practice at issue caused them to pay a higher price for a commodity. An antitrust injury is one that flows from the aspects of the defendant's conduct that are adverse to competition. Associated General Contractors of California v.Clifornia State Council of Carpenters, supra, 459 U.S. 519;Rebel Oil Co. v. Atlantic Richfield Co., 51 F.3d 1421, 1433 (9th
Cir.), cert. denied, 516 U.S. 987 (1995).
The United States Supreme Court has explained that the antitrust statutes do not provide a cause of action to any plaintiff simply because the plaintiff has an injury with some causal link to an anticompetitive behavior; rather, only a plaintiff who suffers an "antitrust injury" may recover under the Act. The purpose of requiring that the injury be an antitrust injury "ensures that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the laws in the first place." Atlantic Richfield Co. v. USA Petroleum Co., supra,495 U.S. 342; Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104
(1986). CT Page 755
The plaintiffs' reliance on Blue Shield of Virginia v. McCready, supra, is misplaced. In that case, the alleged anti-competitive conduct of the defendant medical insurers in refusing to pay for the services of psychologists rather than psychiatrists to treat certain conditions caused the plaintiff a consumer of the services of a psychologist, to pay more for health care services. In McCready the injury, increased cost to the consumer, arose from anti-competitive agreements by insurers not to pay for the services of psychologists and was the sort of injury that the antitrust statutes were enacted to prevent. In Associated GeneralContractors v. Carpenters, supra, 495 U.S. 535-36, the Supreme Court explained that in deciding McCready it did not mean that the antitrust laws allowed every person tangentially affected by an antitrust violation to maintain an action for damages:
 There is a similarity between the struggle of common-law judges to articulate a precise definition of the concept of "proximate cause," and the struggle of federal judges to articulate a precise test to determine whether a party injured by an antitrust violation may recover treble damages. It is common ground that the judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrongdoing. In both situations, the infinite variety of claims that may arise make it virtually impossible to announce a black-letter rule that will dictate the result in every case. Instead, previously decided cases identify factors that circumscribe and guide the exercise of judgment in deciding whether the law affords a remedy in specific circumstances.
(Footnotes omitted.) Associated General Contractors v. Carpenters, supra, 459 U.S. 535-36.
The plaintiffs assert that the conduct of the defendants that allegedly violated the antitrust act resulted in purchase of an ineffective drug. The quality or efficacy of products are consumer interests, to be sure, but they are not interests that the antitrust act was enacted to protect, and buying an ineffective product does not constitute antitrust injuries. Antitrust statutes cannot be used to obtain relief generally for deceptive practices or common law fraud claims. Wojcieszek v. NewEngland Telephone and Telegraph Co., 977 F. Sup. 527 (D.Mass. 1997), citing In re Air Passenger Computer Research, 727 F. Sup. 564, 568-69
(C.D.Cal. 1989).
Because the plaintiffs have not alleged an antitrust injury, as defined above, they lack standing, and their antitrust claim must be stricken. CT Page 756
Indirect vs. direct injury
The defendants assert that the other considerations listed inAssociated General Contractors of California v. California State Councilof Carpenters, supra, 495 U.S. 519, supply additional grounds for striking the antitrust claim.
The United States Supreme Court has ruled that indirect purchasers of products do not have standing to assert a cause of action under the federal antitrust provision that prohibits anti-competitive pricing schemes where there are potential plaintiffs, such as the defendants' competitors, who have suffered a direct injury from the practices at issue. Associated General Contractors of California v. California StateCouncil of Carpenters, supra, 495 U.S. 519; Illinois Brick Co. v.Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707, rehearing denied,434 U.S. 881 (1977). In Illinois Brick, the State of Illinois alleged that it was a consumer of concrete blocks in its building projects, and that the defendant manufacturer had illegally conspired in pricing blocks sold to masonry contractors, who in turn sold the products as part of the work they performed for general contractors, who passed the increased cost along to Illinois as an end user. Since injury to the end user in such a chain of sales depends on whether the intermediate buyers had passed the cost along, the Court ruled that only those who purchase directly from the alleged price-fixer have standing to assert a claim.
The Court adopted this approach to standing to serve two policy goals: 1) avoiding the risk of multiple liability to defendants, and 2) avoiding the difficulties of proving the amount of the impact of the pricing violation actually passed along to the ultimate consumer.
The movants have argued that the plaintiffs in this case, like the State of Illinois in Illinois Brick Co. v. Illinois, supra, 431 U.S. 720, are indirect purchasers who likewise lack standing. The complaint does not, however, allege the plaintiffs' source of the Baycol they ingested. Under the very general allegations of the complaint, the plaintiffs could potentially prove that they bought Baycol directly from the defendants, for example, by mail order. The pleadings do not support the defendants' assumptions that the drugs at issue were sold first to pharmacies or doctors and were then resold to the plaintiffs. The defendants ask this court to construe the complaint in a manner unfavorable to the viability of the plaintiffs' claims, that is, to assume that they are indirect purchasers. The standard applicable to motions to strike instead compels the court to give the indefinite allegations of the complaint a favorable construction. Accordingly, the court does not rely on this ground in striking the antitrust claim. CT Page 757
CUTPA Claim
The plaintiffs allege that the same conduct that they allege to be a misrepresentation and a violation of the Connecticut Antitrust Act also violates CUTPA, which prohibits use of unfair or deceptive trade practices. The plaintiffs claim that the unfair or deceptive practices were 1) the alleged misrepresentations concerning the efficacy of Baycol alleged in Count One and 2) the anti-trust violation alleged in Count Two. The defendant has moved to strike so much of this count as is based on an underlying antitrust violation as a deceptive practice.
The standard for determining whether an act or practice constitutes a CUTPA violation is the test, known as the "cigarette rule," recognized by the Federal Trade Commission in enforcing the federal statute on which CUTPA is modeled:
 (1) Whether the practice, without necessarily having been considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers.
Jacobs v. Healey Ford-Subaru, Inc., 231 Conn. 707, 725 (1995); A-GFoods, Inc. v. Pepperidge Farms, Inc., 216 Conn. 200, 215 (1990). The plaintiffs assert that both the common law tort of negligent misrepresentation and the statutory provisions of the state antitrust act supply the public policies from which the alleged acts of the defendants may be characterized as deceptive or unfair. The defendants assert that if the plaintiffs have not pleaded facts that would state a cause of action under the antitrust act, they likewise have not stated a cause of action under CUTPA based on a violation of the public policies protected by that statute. As has been detailed above, the antitrust act requires that a plaintiff plead and prove both a per se antitrust violation and a cognizable "antitrust injury." The plaintiffs take the position that if the practices at issue constitute predatory pricing, a per se antitrust violation, then the unfair act supports a CUTPA claim, whether or not they can satisfy the other requisites for antitrust liability.
The Connecticut Supreme Court has rejected such an approach to statutory bases for CUTPA claims in Lees v. Middlesex Insurance Co.,229 Conn. 842, 850 (1994). In that case, the plaintiff alleged that the CT Page 758 defendant had violated CUTPA because it had violated the public policy stated in the provisions of the Connecticut Unfair Insurance Practice Act ("CUIPA"), Conn. Gen. Stats. §§ 38-60 et seq. Citing Mead v. Burns,199 Conn. 651 (1986), the Court ruled that a plaintiff who could not prove a general business practice, which is an element of CUIPA, did not state a cause of action under CUTPA for conduct for which the provisions of CUIPA supplied the statutory basis for unfairness. In other words, a plaintiff unable to prove the elements of a CUIPA claim could not invoke CUIPA as a standard for holding a practice unfair or deceptive under CUTPA. The reason for this outcome is plain. Were the courts to hold otherwise, a plaintiff could impose liability for statutory violations via CUTPA even though he or she was unable to prove all the essential elements of the statute invoked, with the effect of removing the requirements of such statutes.
As this court has found in ruling on the motion to strike the antitrust claim, the injury that the plaintiffs assert, purchase of an ineffective drug, is not an "antitrust injury." Failure to state a claim under the antitrust act bars recovery for an antitrust violation under CUTPA.
The motion to strike the CUTPA claims grounded on an antitrust violation is granted.
CUTPA Class Action Allegations
The defendants have also moved to strike the plaintiffs' claims for relief for a class of plaintiffs, on the ground that the plaintiffs have not limited their class allegations of CUTPA claims to those who have suffered losses from alleged unfair trade practices in trade or commerce that occurred in Connecticut. CUTPA, at Conn. General Statutes §42-110a (4), defines "trade" or "commerce" as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real personal or mixed, and any other article commodity, or thing of value in this state. (Emphasis added.) Plaintiff Rose A. Lavoie alleges at paragraph 6 of the complaint that she is a resident of Fairfield, Connecticut. In the same paragraph, plaintiffs Julie Baumann and Florence Babiak allege that they are residents of Washington and Philadelphia, respectively. The plaintiffs allege that they seek to represent a nationwide class, with no mention of restricting the class claims under CUTPA to class members who experienced an unfair trade practice in Connecticut.
The plaintiffs' class allegations, however, relate not only to the CUTPA claim but also to the common law claim for negligent misrepresentation, a claim that is not subject to a geographical CT Page 759 limitation as to the locus where the injury took place. Because of the commingled nature of the class claims, it is inappropriate to address them by a motion to strike.
In order to proceed as representatives as a class, the plaintiffs will have to move for class certification, at which time they may provide separate class definitions for the CUTPA and non-CUTPA claims. If the plaintiffs seek to certify a class that fails to limit class claims in the manner advocated by the defendants as applicable to CUTPA claims, the issue will be ripe for opposition by the defendants.
The allegations of the complaint could be read to include those persons now scattered nationwide who were subjected to unfair trade practices in Connecticut. Under the standards applicable to motions to strike, since such a construction is possible under the allegations, the motion to strike the CUTPA class allegations must be denied.
Conclusion
The motion to strike the first count is denied. The motion to strike the second count is granted. The motion to strike the portion of the third count based on an alleged antitrust violation is granted. The motion to strike the CUTPA class allegations is denied.
 ___________________ Beverly J. Hodgson Date Judge of the Superior Court